Filed 2/18/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of KIM M. and JEFFREY E. SHIMKUS. | |
| KIM M. SHIMKUS, Appellant, v. JEFFREY E. SHIMKUS, Respondent. | G050323, G050599 (Super. Ct. No. 10D008675) O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Salvador Sarmiento, Judge.  Affirmed in part and reversed and remanded in part.

Brauer Law Corporation, Laurel B. Brauer and Hogan W. Song for Appellant.

Shuff Law Firm, Tamara Shuff Mortensen and Joseph A. Shuff III for Respondent.

Appellant Kim M. Shimkus (Kim)[1] appeals from a postjudgment order granting the request of respondent Jeffrey E. Shimkus (Jeff) to terminate spousal support. She contends the court erred when it did not automatically admit declarations into evidence; failed to apply the disentitlement doctrine; found there was a change of circumstances warranting termination of spousal support; and failed to require Jeff to prove inability to work. She also claims procedural errors: the court did not provide a statement of decision, failed to set out its analysis of the factors in Family Code section 4320 (all further statutory references are to this code unless otherwise specified), and failed to make findings as to its denial of attorney fees.

We conclude the court did not err when it refused to consider the declarations that were never offered into evidence. Nor was it error to find the disentitlement doctrine did not apply. Further the court properly found a change of circumstances allowing it to consider whether support should be modified.

However, in making its decision the court was required to consider all of the section 4320 factors. We cannot determine whether it did so because it failed to issue a statement of decision. Therefore, we reverse and remand for the court to consider all of the applicable section 4320 factors, issue a statement of decision, and to make findings as to its denial of attorney fees.

## FACTS AND PROCEDURAL HISTORY

The parties were married for almost 22 years before they separated. The judgment of dissolution was filed in September 2011. Jeff was ordered to pay spousal support in the sum of $3,000 per month, based on his gross monthly income of $9,442 and Kim's gross monthly income of $1,143 per month. Jeff was also ordered to pay $73,752 nonmodifiable spousal support, as a remedy to collect the equalization payment,

---

[1] We use the parties' first names for clarity, not out of any disrespect.

2

payable at the rate of $1,100 per month (nonmodifiable support).  Jeff's pensions were also divided.

In October 2013 Jeff filed a request for order (RFO)[2] to, among other things, terminate spousal support (support RFO).  In his declaration he claimed there would be a "substantial change in circumstances" (boldface omitted) in the next 60 days when he retired from the fire department, thereby reducing his income.  He was retiring at age 61 because of the physical demands of the job and would be receiving a pension through the California Public Employees' Retirement System (CalPERS) of about $7,560 per month.[3]  He claimed this was a significant reduction in his base monthly payment in addition to the loss of overtime.  He stated that his income would be insufficient to continue to pay support.

Jeff set out Kim's income and stated he understood she had begun to draw on her portion of the CalPERS pension awarded in the judgment.  He claimed, based on the reduction in his income, it would cause him substantial financial hardship if he had to continue to pay support.  He further asserted Kim's increased income from the pension justified termination of support.

In opposition, Kim filed an RFO for attorney fees and sanctions (fee RFO).  She stated the last support payment she received was in January 2014.  In addition, Jeff had told her he would not pay any further support and had not made a payment in February 2014.

At the beginning of the hearing on the RFO's, the court stated each party would be able to present "any and all evidence."  Kim's lawyer requested the court rule

_____

[2]  A motion or order to show cause must use the Judicial Council form entitled "Request for Order."  (Cal. Rules of Court, rule 5.92; *In re E.M* (2014) 228 Cal.App.4th 828, 851, fn. 19.)

[3]  He also had a small pension of $164 per month through the California State Teachers' Retirement System.

3

first on her objections to the declarations of Jeff and his counsel. The court replied it would take oral testimony and would rule on any objections made when questions were asked. Kim's attorney responded, "Okay."

In her opening statement, Kim's lawyer stated she would be presenting certain evidence "from the declarations." At the end of Kim's testimony, the court inquired of her attorney, "Any other evidence?" and counsel replied, "No, everything has been provided in the paperwork, your honor." The court did not respond.

During closing argument Kim's counsel argued Jeff was in contempt due to his failure to pay spousal support, and thus he could not seek modification of the order. The court commented it understood case law held there had to be a finding of contempt, not just an allegation, and in this case there had been no such finding. When the court stated it required evidence to such effect, Kim's lawyer responded that the evidence was in Kim's declaration in opposition to the request. Jeff's counsel countered there was no such evidence before the court.

The court stated the evidence in the hearing was the testimony and documents admitted, and "[n]othing else." Kim's lawyer argued that the declarations filed were in evidence, absent any objections.

When the court took the matter under submission, it stated it would "look at all the pleadings" and "closely at [California Rules of Court,] rule 5.111."[4] (All further references to rules are to the California Rules of Court.) Kim's counsel confirmed the court had not ruled on her objections to the declarations filed by Jeff and his counsel and asked the court to review them, to which the judge replied he would.

In the order (Order) granting the support RFO, as to the declarations, the court ruled the only evidence was that presented by oral testimony and exhibits introduced into evidence, characterizing the declarations as "un-received evidence."

---

[4] Rule 5.111 requires a party to file a declaration supporting an RFO and provides the mechanism for objecting to the contents.

4

The Order terminated support as of January 1, 2014. The original judgment found Jeff's income was $9,442 and Kim's was $1,143. After payment of spousal support and the nonmodifiable support, Jeff's income was $5,342 and Kim's was $5,243.

The court further ruled:

"At the hearing the evidence showed [Jeff's] income from his retirement is $7,861. This started in January [2014]. The evidence also showed that his average income in 2013, before his retirement[,] was $19,344.

"Evidence showed [Kim's] present income was as follows: $1,083 from employment, $280 from her son's assistance,[5] $3,691 from her pension and the $1,100 non-modifiable spousal support[;] total, without the $3,000 spousal support order, is $6,154.

"Court received evidence of two significant change of circumstance, the first [Jeff's] retirement and the second [Kim's] income from the pension plan. It can be argued that a retirement before the age of 65 does not automatically result in a modification of support. It can be argued that the retirement was done for the sole purpose of not having to pay the support. This would force the court to look at [Jeff's] ability to earn.

"In the case *In re Marriage of Sinks*[] (1988) 204 Cal.App.3d 586, where[]in the court indicated in a case such as this the court may have look at ability to earn; but more importantly in its ruling it ordered that support should be reduced by the exact amount of increase in the supported spousal's [*sic*] income, therein $241. It held, '[a]ccordingly, we find the trial court should have, in the proper exercise of its discretion, reduced the support level by $241. Otherwise, [the wife] will receive a $241 per month windfall at the expense of [the husband].' p. 592 footnote 2[.]

_____

[5] Kim's son from a prior marriage has Down's syndrome and receives state aid.

5

"Following the ruling in *Sinks*, [Jeff's] income is irrelevant (whether it is 19, 9 or 7 thousand); the significant change in circumstances is the increase in [Kim's] income by $3,691. The proper exercise is to reduce the support dollar for dollar as in *Sinks*."

This was the extent of the findings on the issue of spousal support modification. The court also ordered the parties to pay their own attorney fees and costs.

Kim filed objections to the Order. She asserted the court failed to issue a statement of decision or findings required under section 4320 and requested the court do so. The court did not take any action.

Kim then filed a motion to vacate the Order, on the same grounds on which she bases her appeal. Within a few days thereafter and before the hearing on the motion to vacate, Jeff served a proposed Findings and Order After Hearing (proposed findings). Kim responded the court had already issued its findings and an order and further that the proposed findings were untimely.

At the hearing on the motion to vacate, as to alleged failure to issue a statement of decision, the court stated its minute order was sufficient, remarking it set out the court's reasoning.

Jeff's attorney agreed the Order was proper if it added findings on attorney fees, and suggested language to that effect. Kim's lawyer countered there had been no findings on attorney fees.

The court denied the motion to vacate and asked Jeff to submit Findings and Order After Hearing (FOAH) for the court's review; counsel did so. The FOAH was filed in June and was identical to the proposed findings except for the addition of findings on attorney fees, set out in checked boxes on the attorney fees attachment to the FOAH.

Kim then filed lengthy objections, disputing the findings as to attorney fees and the marital standard of living; there was no reply from the trial court.

Additional facts are set out in the discussion.

6

**DISCUSSION**

*1. Admissibility of Declarations*

Kim contends the court erred in not automatically admitting the declarations filed with the RFO's and oppositions. Although she advances several theories as to why these declarations were or should have been admitted, they do not persuade.

Preliminarily, Kim never explains the harm in excluding the declarations. She does not point to evidence on which she would have relied had they been admitted or how she has been prejudiced. Under Code of Civil Procedure section 475, we may not reverse a judgment unless an error was prejudicial and a different result was likely in the absence of the error. Prejudice is not presumed. And it is not our responsibility to comb through the record to locate possible errors.

But even on the merits the argument fails. Kim cites Code of Civil Procedure section 2009, which allows affidavits[6] to be used in connection with some types of motions. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1355.) She then relies on Code of Civil Procedure section 1003, that provides any written "direction" of the court and not included in a judgment is an order and an "application for an order is a motion," and thereby concludes the RFO's were motions, for which declarations are permissible.

---

[6] "'A valid declaration has the same "force and effect" as an affidavit administered under oath.' [Citation.]" (*Garcia v. Superior Court* (2007) 42 Cal.4th 63, 70, fn. 7.)

7

Even so it is irrelevant whether the RFO is a motion or some other form of action. Section 217[7] instructs that in a hearing on a motion or order to show cause, except under limited circumstances, i.e., the parties' stipulation or good cause, live testimony is required. (§ 217, subds. (a), (b).) And the court made it clear the hearing would be conducted using live testimony.

At the beginning of the hearing, the court told both counsel Jeff would be able to present his evidence and Kim would then have the same opportunity. When Kim's counsel mentioned her objections to Jeff's declarations, the court stated, "I'll be hearing the testimony orally, so you can make the objections when they ask the questions," to which Kim's lawyer responded, "Okay." This made it clear Kim needed to present live testimony as to the evidence in her declarations, and she had every opportunity to do so and to question Jeff as to the statements in his.

Moreover, had Kim wanted the declarations admitted, she merely needed to move to do so or seek a stipulation for admission. She understood this because she stipulated to admit the income and expense declarations. And she refused to stipulate to admission of the other declarations without the court first ruling on her objections.

---

[7] The full text of section 217 is: "(a) At a hearing on any order to show cause or notice of motion brought pursuant to this code, absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties.

"(b) In appropriate cases, a court may make a finding of good cause to refuse to receive live testimony and shall state its reasons for the finding on the record or in writing. The Judicial Council shall, by January 1, 2012, adopt a statewide rule of court regarding the factors a court shall consider in making a finding of good cause.

"(c) A party seeking to present live testimony from witnesses other than the parties shall, prior to the hearing, file and serve a witness list with a brief description of the anticipated testimony. If the witness list is not served prior to the hearing, the court may, on request, grant a brief continuance and may make appropriate temporary orders pending the continued hearing."

Kim makes much of *Elkins v. Superior Court*, *supra*, 41 Cal.4th 1337, which she cites for the proposition that declarations, which are hearsay (*id.* at p. 1354), are not admissible in dissolution *trials*. *Elkins* stated declarations are allowed for certain family law motions under Code of Civil Procedure section 2009 but not trials. (*Id.* at pp. 1355, 1360.) But *Elkins* was decided before enactment of section 217 requiring live testimony for motions. (§ 217, added by Stats. 2010, ch. 352, § 3.)

Likewise, Kim's reliance on *Miller v. Miller* (1943) 57 Cal.App.2d 354, 362-363, which states an affidavit properly supports a motion for increased support, is inapt. This case substantially predates the enactment of section 217.

Kim argues section 217 and Code of Civil Procedure section 2009 are not mutually exclusive. This may be so. Nevertheless, as with any evidence, a declaration must be marked and offered and is subject to objections before admission.

Kim also stresses the fact that declarations are required when filing an RFO (rule 5.111).[8] She concludes based on this requirement that "logically, [the declarations] must be admitted into evidence." She points to rule 5.111(c)(1), which allows for objections to declarations, contending there would be no reason for this provision if declarations were not automatically in evidence. This argument is flawed.

As noted, the parties may stipulate that declarations be admitted, in conjunction with or in place of live testimony. And declarations may be offered into evidence. Further, the court may, for good cause, disallow live testimony and rely on declarations. But these options do not equate to automatic admission of declarations.

Moreover, as Kim admits, the purpose of a declaration is to give notice to the opposing party of the basis of the RFO. (See rule 5.92(g)(1) [an RFO must contain "facts sufficient to notify the other party of the declarant's contentions in response to the request for order and in support of any relief requested"].)

---

[8] An RFO must be supported by a declaration containing admissible evidence. (Rule 5.111(a), (b)(2).)

9

Kim claims portions of the Order were not supported by live testimony. For example, she points out there was no live testimony regarding attorney fees. Therefore the court must have relied on the declarations. If so, this was improper.

In section 4.b. of the opinion we discuss the failure of the court to make sufficient findings on attorney fees and remand the matter back so such findings can be made. These findings must be based on testimony or evidence in the income and expense declarations admitted by stipulation, since that was the only evidence before the court.

Jeff's reliance on evidence in the declarations in opposition to Kim's motion to vacate the Order has no effect on our decision. It does not mean the declarations were in evidence or should have been under the facts of this case.

In sum, the declarations were not automatically in evidence nor did the court err in not admitting them under the circumstances of this case.

2. *Disentitlement Doctrine*

Kim contends the trial court should have applied the doctrine of disentitlement to deny Jeff's request to terminate spousal support. She bases this on the fact Jeff had not paid spousal support "for several months" before the hearing. Thus, she argues, he had no right to seek to have the support modified. She maintains the court erred when it ruled there had to be a finding of contempt before the doctrine applied. We are not persuaded the court erred.

There is no evidence Jeff ceased making support payments. Although Kim's declarations in opposition to the support RFO and in support of her fee RFO state Jeff stopped paying support beginning in February 2014, that evidence was not admitted and Kim failed to cite to any testimony to that effect.

Even had this evidence been before the court, Kim's claim fails. Although, contrary to the trial court's understanding, case law instructs there did not have to be a contempt finding (*Guardianship of Melissa W.* (2002) 96 Cal.App.4th 1293, 1299 [court could apply doctrine without "formal judgment of contempt"]), the record makes clear

10

the court would not have relied on the disentitlement doctrine, given that it terminated support as of January 1.

Disentitlement is based in equity. (*San Francisco Unified School Dist. ex. rel. Contreras v. First Student, Inc*. (2013) 213 Cal.App.4th 1212, 1239 [disentitlement is "'a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction'"].) We review the court's exercise of its equitable powers for an abuse of discretion. (*Ho v. Hsieh* (2010) 181 Cal.App.4th 337, 345.) "'An abuse of discretion occurs when, in light of applicable law and considering all relevant circumstances, the court's ruling exceeds the bounds of reason. [Citations.]' [Citation.]" (*Ibid*.) The court did not abuse its discretion.

*3. Change of Circumstances*

*a. Applicable Law and Standard of Review*

A prerequisite to modification or termination of spousal support is a material change of circumstances. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1475.) "'Change of circumstances' means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. It includes all factors affecting need and the ability to pay." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246.)

"The trial court has broad discretion to decide whether to modify a spousal support order. [Citation.]" (*In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.) In exercising that discretion, the court must consider the required factors set out in

11

section 4320.[9] (*In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1150.)  The court

has discretion as to the weight it gives to each factor (*In re Marriage of Cheriton* (2001)

92 Cal.App.4th 269, 304), and then "'the ultimate decision as to amount and duration of

spousal support rests within its broad discretion and will not be reversed on appeal absent

---

[9] Section 4320 states:  "In ordering spousal support under this part, the court shall consider all of the following circumstances:  [¶] (a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:  [¶] (1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.  [¶] (2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.  [¶] (b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.  [¶] (c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.  [¶] (d) The needs of each party based on the standard of living established during the marriage.  [¶] (e) The obligations and assets, including the separate property, of each party.  [¶] (f) The duration of the marriage.  [¶] (g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.  [¶] (h) The age and health of the parties.  [¶] (i) Documented evidence, including a plea of nolo contendere, of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party.  [¶] (j) The immediate and specific tax consequences to each party.  [¶] (k) The balance of the hardships to each party.  [¶] (*l*) The goal that the supported party shall be self-supporting within a reasonable period of time.  Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage.  However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties.  [¶] (m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325.  [¶] (n) Any other factors the court determines are just and equitable."

12

an abuse of [its] discretion.' [Citation.]" (*In re Marriage of Left*, at p. 1150.) Failure to weigh the factors is an abuse of discretion. (*In re Marriage of Cheriton,* at p. 304.)

Kim argues neither Jeff's early retirement nor her drawing on her portion of Jeff's pension were material changes of circumstances automatically triggering termination of spousal support. Again, we are not persuaded.

### b. Pension Payments

The court found Kim's drawing on her share of Jeff's pension was a material change of circumstances. Relying on a footnote in *Sinks*, *supra*, 204 Cal.App.3d 586, the court used the monthly $3,691 pension payment amount as a direct offset, "dollar for dollar," against any spousal support Jeff might have to pay.

Kim claims the court erred in finding this was a material change of circumstances. She argues the court misapplied *Sinks* and should have relied instead on *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387 (*Dietz*). We disagree.

In *Sinks*, in the original judgment the court awarded spousal support to the wife and retained jurisdiction over the husband's pension. When the husband was 62 he was threatened with termination and chose to retire instead with a full pension. The administrator of his pension plan applied to have the court divide the parties' respective shares. The husband sought to have his spousal support modified based on a reduction in his income. (*Sinks*, *supra*, 204 Cal.App.3d at p. 591.)

In denying modification, the trial court stated that, at 62, the husband was "'able-bodied'" without any health problems. It considered his ability to earn rather than his actual income. (*Sinks*, *supra*, 204 Cal.App.3d at p. 591.)

The Court of Appeal affirmed, but modified the amount of support, decreasing it by the amount the wife had begun receiving from the pension, holding the trial court abused its discretion by failing to do so. It noted the wife had stipulated to the reduction and stated that if that was not taken into consideration, the wife would "receive

13

a . . . windfall at the expense of [the husband]." (*Sinks*, *supra*, 204 Cal.App.3d at p. 591, fn. 2.)

In *Dietz* the stipulated dissolution judgment provided for the husband to pay the wife spousal support. It also divided the retirement accounts, giving the wife one-half of the plans and any increase or decrease in value. Years later, the court granted the husband's request to modify spousal support, finding there was a material change of circumstances because the wife was now old enough to draw retirement payments without penalty and certain securities she received in the judgment had appreciated. The Court of Appeal reversed, holding that the wife's "rights to access the retirement accounts on a penalty-free basis and to any increase in their values were insufficient, without more, to constitute a material change of circumstances." (*Dietz*, *supra*, 176 Cal.App.4th at p. 390.)

The *Dietz* trial court relied heavily on *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43 (*Schmir*), in which the wife argued "her ability to make penalty-free withdrawals from her retirement account is not a change in circumstances because the parties must have contemplated when they entered into their support agreement . . . [the wife] would reach the age when she could begin making withdrawals from the account without penalty. Therefore her reaching the requisite age is not a change in circumstance but merely an aspect of the same circumstance existing at the time of the original support order in 1989." (*Id.* at p. 51, italics & fn. omitted.) The appellate court disagreed, stating "[a]dopting [the wife]'s line of reasoning would mean that as a matter of law the supporting spouse's attainment of retirement age could never constitute a change of circumstance for purposes of a motion to modify a support order." (*Ibid*.)

*Dietz* agreed that "a supporting spouse's attainment of retirement age may constitute a material change of circumstances for purposes of a motion to modify a support order, depending on the circumstances of a given case. The loss of income as a result of a supporting spouse's retirement at an appropriate age might be such a case. We

14

do not agree, however, that such a proposition establishes as a matter of law that a supported spouse's attainment of the age by which retirement accounts divided in a marital settlement agreement might be accessed without penalty automatically constitutes a material change of circumstances." (*Dietz, supra*, 176 Cal.App.4th at p. 404.)

*Dietz*, however, is distinguishable. The spousal support judgment at issue here specifically considered only the parties' gross monthly income.[10] Although the judgment included a division of husband's pension, it did not consider any future payments in calculating the amount of spousal support. Thus, in this case, even though the judgment contemplated Kim would ultimately receive her share of the pension, her increased income from the pension is a change of circumstances.

Further *Dietz* stated "there might be a case where the trial court could properly exercise its discretion to impute reasonable withdrawals from retirement accounts as additional income for purposes of modifying spousal support." (*Dietz, supra*, 176 Cal.App.4th at p. 405.) We conclude this is one such time.

The monthly addition of the $3,700 pension payment is a decrease in Kim's needs, falling within the definition of a change of circumstances. (*In re Marriage of West, supra*, 152 Cal.App.4th at p. 246.) Thus, the court did not err in finding Kim's receipt of pension payments was a material change of circumstances.

### c. Jeff's Retirement

Jeff retired when he was 61 after over 31 years as a firefighter. His last classification was as a fire captain paramedic. During his tenure he suffered some work-related injuries, including an injury to his lower back, causing his work status to be changed to "permanent station[a]ry." He also sustained two cervical injuries, the latest in

---

[10] The judgment also included the sum of $1,100 in "non-modifiable spousal support," which was specifically stated to be the "remedies . . . to enforce and collect the equalization payment [due Kim]." The trial court included this amount in Kim's income for purposes of deciding to terminate spousal support. This is not an issue in the appeal.

15

approximately 2008. The injury to his neck, which Jeff described as "pervasive," caused constant pain requiring him to change his personal lifestyle. Jeff testified, "I retired because I was too old to do the job adequately." He described the physical requirements of his job, including weights of various pieces of equipment he could have to carry. Jeff elected not to retire on disability, but to put in his 30 years.

The "normal retirement age" of a firefighter is 55. (Cal. Code Regs., tit. 2, § 586.1, subd. (a)(2)(C) [55 is "highest specified age" to retire if person is "entitled to benefits under" Government Code section 21363]; Gov. Code, § 21363, subd. (a) [section applies to firefighters].)

Kim contends we cannot consider this because these alleged "facts" were not admitted in evidence and Jeff did not make this argument in the trial court. She is mistaken. The code section and regulation are laws, not facts. Additionally, in his opening statement, Jeff stated he was "at the age of retirement." And in his closing argument he argued 65 was not the normal retirement age for a firefighter. So Jeff is not advancing a new theory or new facts, and we may consider this claim. (*Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 89, fn. 6)

Kim argues Jeff's "actual role as a captain" was primarily administrative. But there was no evidence presented to the court to support this claim. Kim cites only to a statement in a declaration that was not admitted into evidence.

We conclude Jeff did not retire early. Although 65 is the common generally accepted normal retirement age (*In re Marriage of Reynolds*, (1998) 63 Cal.App.4th 1373, 1378 (*Reynolds*); see *Sinks*, *supra*, 204 Cal.App.3d at p. 595, dis. opn. of Work, J.), Government Code section 21363, subdivision (a) and California Code of Regulations, title 2, section 586.1, subdivision (a)(2)(C) plainly state 55 is the "normal

16

retirement age" for a firefighter.[11] As a result, we conclude Jeff is subject to the rules applying to those who retire at 65.

For example, *Reynolds*, *supra*, 63 Cal.App.4th 1373 stated "no one may be compelled to work after the usual retirement age of 65 in order to pay the same level of spousal support as when he was employed." (*Id.* at p. 1378.) In that case the husband retired at 67 and sought to modify or terminate spousal support. The trial court reduced support but based the new amount on the husband's earning capacity instead of earnings.

The Court of Appeal reversed, stating using earning capacity was error because it would require the husband to work beyond the normal retirement age. "The 'capacity to earn standard' may only be applied where there is evidence of the ability, opportunity, and willingness to work." (*Reynolds*, *supra*, 63 Cal.App.4th at p. 1378.) Where there is a "bona fide retirement," it may be considered a material change of circumstances justifying a modification of spousal support. (*Id*. at p. 1379.) "Just as a married couple may expect a reduction in income due to retirement, a divorced spouse cannot expect to receive the same high level of support after the supporting spouse retires." (*Ibid*.)

But the mere fact Jeff retired does not ipso facto require modification or termination of his spousal support. As stated above, the court must consider all of the applicable section 4320 factors. And "the 'court may not be arbitrary; it must exercise its discretion along legal lines, taking into consideration the applicable circumstances of the parties set forth in [the statute], especially reasonable needs and their financial abilities.' [Citation.] Furthermore, the court does not have discretion to ignore any relevant circumstance enumerated in the statute. To the contrary, the trial judge must both recognize and apply each applicable statutory factor in setting spousal support.

---

[11] Husband is maxed out on the amount of his pension. Pension payments are the same for firefighters who retire at 55 and those who are older. (Gov. Code, § 21363, subd. (a).)

17

[Citations.] Failure to do so is reversible error." (*In re Marriage of Cheriton*, *supra*, 92 Cal.App.4th at p. 304, italics omitted.)

Nonetheless, in considering those factors, the court must keep in mind that Jeff has retired at a normal age and weigh all of the elements in that light.

*4. Statement of Decision and Findings Under Sections 4320, 3654, and 2030*

*a. Statement of Decision and Section 4320 Findings*

Kim contends the court erred by failing to issue a statement of decision and make findings under sections 4320 and 4332.[12] We agree.

Pursuant to Code of Civil Procedure section 632, if requested by a party, the trial court must issue a statement of decision stating "the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. . . . The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision."

Kim contends Jeff asked for a statement of decision at the beginning of trial. His counsel stated: "[A]s the court knows, it has to make a recorded statement of decision regarding the [section] 4320 factors." Although not the clearest statement, arguably this is a request for a statement of decision as to those factors.

Kim is correct that the court did not issue such a statement. Failure to do so is reversible error per se (*In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, 1010), and the normal remedy is to remand the case and order the court to issue such a statement (*Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1130).

Even if we cannot construe Jeff's statement as a request for statement of decision, it unquestionably was a request for findings as to the section 4320 factors. "At

---

[12] The court was not required to make findings under section 4332 since that section requires findings as to the parties' standard of living in the dissolution proceeding.

the request of either party, an order modifying, terminating, or setting aside a support order shall include a statement of decision." (§ 3654.)

As shown above, section 4320 requires the court to """"both recognize and apply each applicable statutory factor in setting spousal support. [Citations.] Failure to do so is reversible error.""" (*In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1297, italics omitted.)

Neither the Order nor the FOAH[13] reveals if or how the court considered these factors. The Order mentioned only Jeff's retirement and Kim's collection of her portion of the pension and then found that only the latter factor was important. None of the other 14 factors was mentioned. The FOAH merely reiterated the Order.

Jeff cites the evidence he introduced as to the section 4320 factors, but points to nothing to show the court actually considered that evidence.

Thus, the case must be reversed for the court to set out a statement of decision as to the basis of its findings, including all of the section 4320 factors.

*b. Attorney Fee Findings*

"When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties." (§ 2030, subd. (a)(2).) In determining whether to award attorney fees and costs in postdissolution proceedings, the trial court must consider "'how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances.'" (*In re Marriage of Terry* (2000) 80 Cal.App.4th 921, 933.)

_____

[13] At oral argument Jeff's counsel claimed the court acknowledged it had considered all factors in the tentative ruling. No such ruling is in the record. And there was no such statement in the minute order.

19

Here, when the court issued the Order, it denied attorney fees and costs without explanation. Recognizing this, in offering to prepare the FOAH Jeff's lawyer advised that the court needed to make findings as to attorney fees, stating: "The one thing that I might say to the court under [section] 2030[, subdivision (a)(2)] is that the court can make more specific findings and just say under the attorney fee request that there's a disparity between the parties[,] access to funds, if there's no disparity and that the party who has requested attorney's fees does not or [is not] reasonably likely to have the ability to pay for legal representation, and, therefore, the court can make the order regarding attorney's fees. [¶] With that supplement to the tentative decision,[14] the tentative decision is fine."

Counsel then offered to prepare the FOAH with the addition of the attorney fees findings. The court made no response but offered Kim's lawyer the opportunity to state the "[l]ast thing."

She objected to opposing counsel's suggestion as to the addition of the attorney fees findings, stating it was not sufficient for the court to "supplement" attorney fees findings because the court had made no findings.

The court ruled the minute order would be its final order and asked Jeff's lawyer to prepare a proposed order. The FOAH contained three findings as to attorney fees: 1) there had been no showing of disparity in the parties' ability to pay for hiring counsel; 2) the party who had been requested to pay costs and attorney fees was not able to pay for same for both parties; and 3) the attorney fees and costs requested were neither reasonable nor necessary.

Despite Jeff's conclusory statement to the contrary, his attorney's mere addition of these findings to the original minute order by checking boxes on a form does not satisfy the section 2030 requirement that the court make findings. Other than the

_____

[14] There was no tentative decision but only a minute order after the court took the matter under submission.

20

judge's signature on the FOAH there is no evidence the court made these or any findings as to attorney fees and costs. Thus, we reverse and remand for the court to make findings as to the request for attorney fees and costs as well.

## DISPOSITION

The order is reversed and remanded for the court to consider and apply the section 4320 factors in ruling on Jeff's support RFO and to issue a statement of decision to that effect setting out the basis of its decision. The court must also issue findings as to the request for attorney fees and costs. The order is otherwise affirmed.

The parties shall bear their own costs on appeal.


THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ARONSON, J.

21