Filed 2/9/21  Marriage of Patterson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of STEVEN PATTERSON and KELLEE R. PATTERSON. | |
| STEVEN PATTERSON,  Respondent,  v.  KELLEE R. PATTERSON,  Appellant. | F076753  (Kern Super. Ct. Nos. S-1501-FL-595369 & S-1500-CV-264056)  **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Cynthia L. Loo, Commissioner.

Law Offices of Michael G. York and Michael G. York for Appellant.

Steven Patterson, in propria persona, for Respondent.

-ooOoo-

Appellant Kellee R. Patterson and respondent Steven Patterson[1] separated in May 2005, and dissolution proceedings were initiated.  The primary subject of the present

---

[1] Respondent's legal name is "Larry Steven Patterson."  We refer to each party by their first name, since they share a last name.

appeal is the characterization of a residential property, and the validity of several agreements involving the property.

In 2014, the trial court invalidated a promissory note and a deed of trust to the property securing the note, along with a marital settlement agreement. In 2017, the trial court ruled the property was Steven's separate property and that Steven was entitled to $75,000 in sanctions. Kellee challenges these rulings on appeal.

We conclude Kellee has not established prejudicial error with respect to the 2014 ruling or the characterization of the property as Steven's separate property. However, we conclude that the court's calculation of the sanctions at $75,000, was erroneously based on a declaration that had not been admitted into evidence nor judicially noticed. Consequently, we vacate the calculation of sanctions and remand on that issue. We otherwise affirm.

## FACTS[2]

Steven received a residential property on Cadet Road via grant deed dated April 14, 1998 (the "Cadet Road property").[3] Steven was not yet married to Kellee, and it is undisputed that, at this point in time, the property was Steven's separate property.

On May 5, 1999, Steven and Kellee were married. Before Steven and Kellee had become "involved" with one another, Steven informed Kellee he had previously undergone a vasectomy.

According to Steven, Kellee told him she "wanted to be impregnated by a friend of hers named Bill Wehunt." However, Kellee was actually already pregnant as a result of an affair with the man. She gave birth to that child in 2000, and another child in 2003. Wehunt was the biological father of both children. Steven always knew he was not the

---

[2] The facts are largely taken from the testimony at an evidentiary hearing in 2014 and a trial in 2017, and the documents referenced in that testimony.

[3] According to Steven, the transfer was the result of an agreement pertaining to the dissolution of his prior marriage to Sue Patterson.

biological father of the two children, but believed their conceptions were the only two times Kellee and Wehunt had sex. Steven testified that after he and Kellee "broke up," he learned she and Wehunt were actually having an ongoing affair.

Even though Steven knew the two children were not biologically his, he held them out as his own. He, Kellee, and the two children lived together as a family until the end of 2004.

In January 2001, Steven lost the Cadet Road Property in foreclosure. In November 2001, Steven's friend, Don Gooch, acquired the property along with his wife, Deanna Gooch. The Gooches then deeded the property to Kellee in December 2001.

In January 2005, the two children went to live with Kellee's parents in Idaho. Steven and Kellee separated on May 3, 2005.

***Meetings About Property Division Between Steven and Kellee in 2005***

According to Steven, he and Kellee had several meetings in the spring and summer of 2005 to discuss dividing their property. Steven claims the two of them orally agreed that he would keep the Cadet Road Property and Kellee would get two other properties.

However, at another of these meetings, Steven and Kellee signed a property division agreement (the "Property Division Agreement").[4] The Property Division Agreement provided that Kellee would receive two properties, one located on Eastern Ave., and the other on 5th. It also provided that the Cadet Road Property "[w]ill become the property of Steve Patterson, at the time the following Note is filed with the County Recorder. Property will be appraised and ½ value will be deemed as owing by Steve Patterson minus half the debt currently owed on June 7, 2005 on said property. A note for that amount will be placed on the property at Cadet Rd. and payments of approx.

---

[4] Steven said they signed the agreement "maybe in May, possible early to mid April" of 2005.

3.

300.00 will commence from date specified on said note at the rate of 5% per annum to Kellee Patterson."

At another meeting in the summer of 2005, Steven and Kellee met with a man named Michael Mathis to discuss child support.[5]  Kellee said she wanted $300 per month in child support ($150 for each child).  Kellee also wanted something in place to ensure Steven would pay.  Accordingly, Mathis prepared a promissory note for $60,000 payable in $300 monthly installments (the "promissory note") and secured by a deed of trust to the Cadet Road Property (the "deed of trust").  In exchange, Steven said he wanted either joint custody of the children or reasonable visitation.

### 2005 Agreements and Documents

Based on Mathis's understanding of the parties' agreement, he also prepared a document titled, Marital Settlement Agreement Pertaining to the Issue of Support of the Minor Children (hereafter, the "Marital Settlement Agreement").  The agreement provided that Kellee "wishes to relinquish any current or future rights to obtain court mandated child support in exchange for a $60,000 promissory note secured by a deed of trust on the property known as [] Cadet Road, Maricopa, CA."  The agreement also provided that if Kellee "violates" the condition that she not seek court-mandated child support, then (1) the promissory note becomes invalid and (2) she forfeited the right to foreclose on the deed of trust.  The Marital Settlement Agreement makes no mention of custody or visitation for Steven.

Mathis conceded on cross-examination that the Marital Settlement Agreement does not reflect Steven's desire to have visitation or joint custody of the children.  As it would turn out, Steven would never see his children from 2006 through the time of his testimony at a hearing in 2014.

---

[5] At one point, Steven indicated this meeting occurred in June 2005.  At another point he said the meeting occurred "in or about May of 2005."

4.

At the time of his involvement in Steven and Kellee's negotiations, Mathis was business partners with his brother-in-law, Dennis Reed. Reed later married Kellee.

In a deed dated June 29, 2005, Kellee granted Steven the Cadet Road Property. Steven also signed the promissory note, dated June 29, 2005, obligating him to pay Kellee $60,000 in monthly installments of $300. The note was secured by the deed of trust to the Cadet Road Property.

*Subsequent Events*

Steven testified that he attempted to make payments to Kellee on the promissory note in August 2005 and again in September 2005. However, according to Steven, Kellee would not accept the payments. Kellee chuckled and told Steven she had tricked him about visitation with the children.

On September 9, 2005, Steven petitioned for dissolution of his marriage to appellant Kellee Patterson. The petition requested that the court "confirm" that the Cadet Road Property was Steven's separate property, and referenced Kellee's deed conveying the property to Steven.

On September 14, 2005, Kellee's parents filed for custody of the two children in an Idaho court. Kellee filed an affidavit in support of her parents' request for custody. She admitted the children were conceived "as a result of an ongoing affair" she had with Wehunt. Kellee contended that Steven "has no legal relationship" to the children. Steven tried to intervene in the Idaho court proceedings, but his motion to intervene was denied.

On November 17, 2005, Kellee filed a response to Steven's petition for dissolution. In that filing, Kellee stated under penalty of perjury that there were no minor children of the marriage. In an attachment, Kellee proposed that Steven receive the Cadet Road Property.

In January 2006, Kellee's parents prevailed in their custody action in Idaho court, obtaining a default judgment for custody of the two children.

In March 2006, Kellee assigned the deed of trust to the Cadet Road Property to a man named J. Cranor Richter. Richter then assigned the deed of trust to Kellee's lawyer, Michael G. York, in February 2007. The deed of trust was transferred to York for the purpose of satisfying York's legal fees owed by Kellee.

York began foreclosure proceedings on the deed of trust in early 2006. The foreclosure sale took place on May 7, 2008. York testified that he was holding the property in trust for Kellee, subject to a lien for his attorney fees.

***Proceedings on Steven's 2013 Request for a Court Order Setting Aside the Promissory Note and Deed of Trust***

Years later, on September 17, 2013, Steven filed a request for a court order to set aside the promissory note and deed of trust. In a supporting declaration, Steven stated that Kellee wanted him to sign the $60,000 promissory note "for future child support of two children I believed were my children at the time." Steven further declared that, *after* signing the promissory note, he learned that another man was actually the father of the two children.[6] Kellee opposed Steven's request to set aside the promissory note and deed.

In an order dated September 10, 2014, the family law court ruled that the promissory note, marital settlement agreement, and deed of trust were void. The court noted that Steven's testimony saying he knew the children were not his from the beginning was a "troublesome reversal of his [prior] position" that he discovered the children were not his *after* executing the promissory note. As a result, the court rejected Steven's contention the promissory note should be set aside due to fraud or misrepresentation concerning the parentage of the children.

---

[6] As noted above, Steven testified at the 2014 hearing that he always knew he was not the biological father of the children. Steven's counsel said the conflict between Steven's testimony and his declaration was the result of a miscommunication between him and Steven.

6.

However, the court found that the promissory note was "void a[s] a matter of public policy" because it attempted to divest the court of its jurisdiction over child support.

The court also found that Kellee's "subsequent action[s] during the Dissolution process, [which] include her denial that there were children of the Marriage and her transfer of the Note and Deed of Trust for consideration to a third party are, in this court's opinion, a violation of her fiduciary obligations, including as codified in the standard Family Law Restraining Orders contained on the Summons…." The court stated that these breaches "serve[] as an additional basis to void the Promissory Note" but that it would not address the issue further "in light of previous holding above." Presumably, the "previous holding above" is a reference to the voiding of the promissory note pursuant to public policy.

The court directed that the promissory note be "cancelled" and ordered that Steven's "temporary possession of the Cadet property is now made permanent." The court's order noted that the Cadet Road Property was "subject to further order of the court regarding its division as a community asset…."

**Trial Proceedings in 2017**

On February 8, 2017, the court held a trial on the remaining issues in the case, including the contentious issue of whether the Cadet Road Property was community property or Steven's separate property.

On December 8, 2016, ahead of the trial, Steven filed a motion seeking attorney fees and sanctions against Kellee and York.

At trial, the court received testimony from Steven, Mathis, and Don Gooch. The court took the matter under submission and told the parties to submit closing arguments in written form, which they subsequently did.

In June 2017, the court issued its ruling. The court held that the Cadet Road Property was initially presumptive community property because it was deeded to Kellee

7.

by the Gooches during her marriage to Steven. However, Kellee's June 29, 2005, grant deed in favor of Steven satisfied Family Code section 852's requirement of an express transmutation of property.

The court also found that Kellee breached her fiduciary duties, stating in its ruling:

"The Court finds Kellee's actions particularly calculated and vicious given Steven's credible testimony that Kellee told him that she had tricked him, she had no intention of ever letting him see the children, and following his refusal to sign the Visitation Agreement of July 15, 2005, that she was going to take the Cadet Road property, as well as the other two."

The court also concluded Kellee was judicially estopped from asserting the Cadet Road Property was community property because, in her initial response to the dissolution petition, she proposed a property division arrangement wherein Steven would receive the Cadet Road Property.

The court awarded Steven sanctions under Family Code 1101, subdivision (g) in the amount of $75,000.

## DISCUSSION

### I. The 2014 Order Invalidating the Promissory Note, Marital Settlement Agreement and Deed of Trust is Upheld

Kellee first challenges the trial court's 2014 ruling, which voided the promissory note, marital settlement agreement, and deed of trust.[7]

As noted above, the court rejected Steven's claim for rescinding these agreements "based upon fraud or misrepresentation by Respondent regarding the parentage of the children." The court held that Steven's "troublesome reversal of his position regarding his knowledge that the children were his … effectively removed any factual basis for his request."

---

[7] Steven's respondent's brief is virtually devoid of citations to the appellate record, and we disregard the bulk of it. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Nonetheless, it remains Kellee's burden as appellant to affirmatively demonstrate error on appeal, not respondent's burden to show the order and judgment are supported. (See *People v. Justice* (1959) 167 Cal.App.2d 616, 621.)

However, the court went on to rule in Steven's favor on two alternate grounds. First, it concluded that the promissory note violated public policy against agreements divesting courts of jurisdiction over child support and was therefore void:

> "It is also clear that a child support agreement that attempts to divest the Court of it[]s jurisdiction over such support is void a[s] a matter of public policy. [Citations.] The agreement here is just such an agreement despite its disguise as a Promissory Note that was secured by a Deed of Trust; such a disguise makes it no less void."

Second, the court found that Kellee breached her fiduciary duties in connection with the promissory note and deed of trust.[8] The court found these breaches of fiduciary duty to be an "additional basis to void the Promissory Note."

> "Furthermore, [Kellee's] subsequent action during the Dissolution process, that include[d] her denial that there were children of the Marriage and her transfer of the Note and Deed of Trust for consideration to a third party are, in this court's opinion, a violation of her fiduciary obligations, including as codified in the standard Family Law Restraining Orders contained on the Summons issued in this case and served on her …."

The court continued:

> "Additionally, as set forth in the case of Marriage of Delaney (2003) 11 [Cal.App.] 4th 991[, t]his bre[a]ch of her duties by [Kellee] serves as an additional basis to void the Promissory Note."

On appeal, Kellee raises substantial questions about Steven's claim for rescission based on fraud surrounding the parentage of the children. She argues that Steven did not comply with statutory requirements for such a claim, including (1) offering her a deed to the Cadet Road Property[9] and (2) acting promptly upon discovering facts entitling him to

---

[8] The court noted that Kellee's improper acts "include[d]" her denial that there were children of the marriage, and her transfer of the promissory note and deed of trust to a third party. We understand the order to be merely citing some specific examples of Kellee's improper acts, not that the enumeration of specific examples was meant to be exhaustive.

[9] However, Civil Code section 1691, subdivision (b) only requires an offer to restore the things of value received from *the contract for which rescission is sought*. (Civ. Code, § 1691, subd. (b).) Steven was seeking to rescind the promissory note and

rescission. (See Civ. Code, § 1691.) However, as noted above, the court *rejected* Steven's request for contractual rescission based on fraud surrounding the parentage of the children. Instead, it found that the promissory note and deed of trust were invalid because (1) they violated public policy and (2) they were the result of a spouse's breach of fiduciary duty to the other spouse (see Fam. Code, § 721). As explained below, we conclude the invalidation of the promissory note and deed of trust due to spousal breach of fiduciary duty was legally sound and supported by substantial evidence. Therefore, we do not address these issues raised by Kellee bearing on whether the note and trust deed were *also* voidable under a contractual rescission theory rejected by the trial court.

## A. *Law on Spousal Breach of Fiduciary Duty*

"[W]ith respect to property transactions, married couples are subject to the same standards of disclosure toward each other applicable to any confidential fiduciary relationship." (*In re Marriage of Delaney* (2003) 111 Cal.App.4th 991, 996.) Spouses have "a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other." (Fam. Code, § 721, subd. (b).) "[W]hen any interspousal transaction advantages one spouse to the disadvantage of the other, the presumption arises that such transaction was the result of undue influence." (*Ibid*.) When that presumption is not rebutted, a family court may invalidate the transaction. (See *In re Marriage of Delaney*, at pp. 994-995, 1000 [affirming family court's invalidation of grant deed and requiring spouse to execute quitclaim deed to property].)

## B. *Analysis*

Testimony at the evidentiary hearing established that Steven agreed to the promissory note and deed of trust in exchange for the right to visit the two children. Both Steven and Mathis testified to this fact. Yet, nothing in the promissory note or deed of

---

deed of trust. And the Cadet Road Property was not something Steven received under the promissory note or the deed of trust. Thus, he was not required to offer the Cadet Road Property to Kellee as a condition to rescinding the promissory note or deed of trust.

trust reflects this consideration.  Moreover, Steven testified that, months later, Kellee chuckled and told him she had tricked him about visitation with the children.  Kellee filed an affidavit supporting her parents' efforts to obtain custody of the children, arguing that Steven has "no legal relationship" to the children.

This testimony supplies sufficient basis for the court's finding that Kellee breached her fiduciary duties to Steven.  If Steven's testimony is accepted on this point, it is clear that Kellee did not engage in "fair dealing" (Fam. Code, § 721, subd. (b)) with Steven as to the promissory note, marital settlement agreement and deed of trust.  As a result, the court was empowered to set aside the transactions.  (See, e.g., *In re Marriage of Delaney*, *supra*, 111 Cal.App.4th 991.)  We are aware of no authority indicating the family court's power in this regard is limited by the rescission provisions in Civil Code section 1688 et seq.

## II.     Kellee has not Established That Prejudicial Error Affected the 2017 Judgment, Except as to the Calculation of Sanctions

Kellee next raises several claims of error pertaining to the 2017 judgment characterizing the Cadet Road Property as Steven's separate property and imposing sanctions.

"Courts typically apply a substantial evidence standard of review to the court's characterization of property as separate or community.  [Citations.]  In that situation, '[o]ur review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding.  [Citations.]  In so reviewing, all conflicts must be resolved in favor of [the prevailing party] and all legitimate and reasonable inferences must be indulged to uphold the finding.'  [Citation.]  'However, when the resolution of the issue " 'requires a critical consideration, in a factual context, of legal principles and their underlying values,' " the issue is a mixed question of law and fact in which legal issues predominate, and de novo review applies."  [Citations.]"  (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1472.)

11.

A judgment may not be reversed unless prejudicial error is shown, such that a different result was likely in absence of the error. (See Code Civ. Proc., § 475; *In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1269.)

## A. *No Prejudice as to Characterization of Cadet Road Property Has Been Established*

### 1. Consideration of Information Outside of Admitted Evidence

At the February 2017 trial, the court received testimony and documentary evidence and subsequently took the matter under submission. In June 2017 the court issued its written ruling. The ruling had a large "Factual and Procedural Background" section, describing the lengthy history of the case spanning nearly 14 pages. Then, after setting out the applicable law, the ruling had an analysis section setting forth the facts and reasoning the court relied on for its decision, including credibility findings.

Kellee argues the court's ruling indicates it improperly relied on 26 items that were not admitted into evidence.[10] We agree the court should not have considered or referenced any "evidence" that had not been admitted nor properly subjected to judicial notice.[11] However, a judgment may not be reversed unless an error was prejudicial and a

---

[10] The cited items are: Steven's schedule of assets; Steven's UCCJEA declaration; the circumstances, filings and events of several prior court proceedings; a visitation agreement; two assignments; a deed of trust to the Eastern Ave. property; a notice of trustee's sale pertaining to the Eastern Ave. property; a bill of sale; two releases; a broker price opinion; a letter; and two income and expense declarations.

[11] In dissolution proceedings, a declaration is not automatically received into evidence merely because it has been filed with the court. (*In re Marriage of Shimkus*, *supra*, 244 Cal.App.4th at p. 1271.) "[A]s with any evidence, a declaration must be marked and offered and is subject to objections before admission." (*Ibid.*)

Certainly, a court is not powerless to consider a filed document simply because neither party sought to move it into evidence. A court may take judicial notice of its files on its own motion. (Evid. Code, § 452, subd. (d); see also Evid. Code, § 300.) However, if the matters of which it takes judicial notice are "of substantial consequence to the determination of the action," the court must follow a specific procedure. (Evid. Code, § 455.) "If the trial court … has taken … judicial notice of such matter, the court shall afford each party reasonable opportunity … before the cause is submitted for decision by

12.

different result was likely in absence of the error.[12] (See Code Civ. Proc., § 475; *In re Marriage of Shimkus*, *supra*, 244 Cal.App.4th at p. 1269.) As explained below, we conclude that it is not reasonably likely Kellee would have obtained a more favorable property characterization absent the error at issue here.

Kellee cites the 26 items of "non-evidence" and identifies where in the court's ruling they are referenced. However, she does not explain how the individual items were material or dispositive to the court's ruling. Indeed, much of the allegedly improper citations to nonevidence identified by Kellee occurs in the introductory, 14-page background section of the court's ruling. The structure of the court's order and its explanation of its holdings indicate the court was largely citing these documents and transcripts to set forth the history of the case – not to support the crucial premises of its ruling. In contrast, the Analysis section shows the court's characterization of the Cadet Road Property as Steven's separate property was largely based on its determination that Steven's *trial testimony* on the subject was credible. As a result, the court determined the June 29, 2005, grant deed executed by Kellee transmuted the Cadet Road Property from community property to Steven's separate property.[13] Thus, while the court did

---

the court, to present to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed." (*Id.*, subd. (a).) That did not occur here.

[12] Kellee argues the error is reversible per se, citing *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291. However, that case held that "[d]enying a party the right to testify or to offer evidence is reversible per se." (*Ibid.*) That is different than what occurred here. If anything, the court considered *too much* "evidence"; it did not prohibit a party from offering testimony or evidence. When a trier of fact arguably considers "evidence" it should not have, courts evaluate whether it resulted in prejudice rather than presuming prejudice.

[13] The court did apparently rely on "non-evidence" when it observed in its ruling that the overall property division "was more than fair to Kellee." In support of its observation, the court cited documentary "evidence" indicating a $90,000 mortgage and $12,000 loan had been taken out on the Eastern Ave. property. However, this was not dispositive to the court's ultimate characterization. Since the parties could agree to an

improperly consider and take notice of other, additional documents, it is clear that the court's ruling was largely predicated on testimony and the grant deed itself, which were unaffected by the error complained of. Therefore, we conclude it is not reasonably likely Kellee would have achieved a better outcome in the absence of the error.

### 2.    Court's Consideration of Custody and Visitation Issues

Kellee also posits that the "primary issue" at trial was the property characterization of the Cadet Road Property. Therefore, she argues, it was improper for the court to consider "irrelevant" evidence about custody and visitation issues. However, while the property characterization of the Cadet Road Property was a *primary* issue at trial, it was not the only issue. Steven had moved the court for an order sanctioning Kellee. The "custody and the visitation" issues in the case were highly relevant to that determination. The court did not err in considering those issues at trial.

### 3.    2017 Ruling's Reference to 2014 Findings Concerning Violation of Standard Family Law Restraining Orders

Kellee also contends that the court erred in stating she violated the standard family law restraining orders[14] by transferring the promissory note and deed of trust to a third party. She argues there was no evidence the summons containing the standard family law restraining orders were served on her, as required by the Family Code. (See Fam. Code, § 233, subd. (a).) However, the promissory note and deed of trust had already been invalidated years earlier by the court's 2014 order. The trial court's 2017 ruling, to which Kellee's present challenge is targeted, stated: "This Court *agrees with Judge Oglesby* [who issued 2014 ruling], that Kellee's actions during the dissolution process, that includes her denial there were children of the marriage and particularly her transfer

---

unequal division of property, the value of the Eastern Ave. property as indicated by the mortgage was not a material fact.

[14] Upon the filing and service of a dissolution petition and summons, several temporary restraining orders listed in the summons relating to the transfer, encumbrance, etc. of property automatically go into effect. (See Fam. Code, § 233, subd. (a).)

14.

of the note and deed of trust for consideration to third party J. Cranor Richter are a violation of her fiduciary obligations, including, as codified in the standard family law restraining orders." (Italics added.)

Moreover, there was ample of evidence Kellee breached her fiduciary duties apart from the transfer of the note and deed of trust. As the court's ruling noted, Steven credibly testified that "Kellee told him that she had tricked him" into signing agreements based on the false promise to allow him visitation of the children. This evidence is more than sufficient to sustain the finding Kellee breached her fiduciary duties, even apart from the issue of transferring the note and deed of trust to J. Cranor Richter. Therefore, we find no prejudicial error. (See, e.g., *In re Marriage of Jones* (1990) 222 Cal.App.3d 505, 515, fn. 4 [once adequate grounds for court's order are established, court's consideration of other matters found harmless].)

### 4. It is for Trial Court to Determine What Weight to Give Indicia of Unreliability and Inconsistency in Witness Testimony

Kellee insists that Steven's testimony was unreliable and contradictory. However, it is the trial court's role to determine the credibility of witnesses, not ours. (*In re Marriage of Martin* (1991) 229 Cal.App.3d 1196, 1200.) "*Conflicts* and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge … to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1149, italics added.)

### 5. Finding of Judicial Estoppel not Necessary to Uphold Property Characterization Determination

Kellee argues that the court erred in concluding that she was judicially estopped from asserting the Cadet Road Property was community property. She argues that her property division proposal in her response to the dissolution petition was just that: a proposal. Therefore, it cannot serve as the basis for judicial estoppel. We agree.

" ' "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.]  The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies.  [Citation.]  Application of the doctrine is discretionary." '  [Citation.]  The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'  [Citation.]' "  (*In re Marriage of Taschen* (2005) 134 Cal.App.4th 681, 689-690.)

Here, the basis for the finding of judicial estoppel was Kellee's property declaration attached to her response to the dissolution petition.  The court stated in its ruling:

> "Kellee's Response proposes awarding the Cadet Road property to Steven. The doctrine of judicial estoppel bars her from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding – here, that the property is community property and should be divided, when she proposed that Steven receive the Cadet Road property in her Response."

In that Kellee's response to the dissolution petition, she indicated in a preprinted column entitled "PROPOSAL FOR DIVISION" that the Cadet Road Property be awarded to Steven.  Thus, Kellee's declaration indicates that she was merely *proposing* – at the outset of the case – that the Cadet Road Property be awarded to Steven as his separate property.  It is not inconsistent to later seek a different award of property. Moreover, any other conclusion would discourage parties from proposing equitable property divisions.

However, while we disagree with the trial court concerning judicial estoppel, it does not warrant reversal of the property characterization.  The court also identified an

16.

independent ground for its property characterization: Kellee deeded the property to Steven pursuant to an oral property division agreement, thereby transmuting the property from community to separate property. (See Fam. Code, § 852.) Kellee has not established error with respect to this independently sufficient basis for the court's property characterization. Therefore, we will affirm it even in light of the erroneous ruling concerning judicial estoppel. (See, e.g., *Jones*, *supra*, 222 Cal.App.3d at p. 515, fn. 4 [once adequate grounds for court's order are established, court's consideration of other matters found harmless].)

### 6. Errors were not Cumulatively Prejudicial

As explained above, the court's 2017 ruling refers to matters outside the trial record. The ruling also contains some incorrect determinations, such as the conclusion that Kellee is judicially estopped from asserting the Cadet Road property is community property.

However, none of these errors – individually or cumulatively – fatally undermine the primary basis for characterizing the Cadet Road Property as Steven's separate property. The court found Steven's testimony credible regarding his property division agreement with Kellee whereby he would receive the Cadet Road Property. And the court concluded this agreement was corroborated by the grant deed Kellee ultimately executed in Steven's favor in June 2005. These premises are not materially affected by ruling's references to nonevidence or other legal theories such as judicial estoppel or violation of the automatic restraining orders.

### B. *Calculation of Sanctions Improperly Based on Declaration that was Not Admitted into Evidence nor Properly Made a Subject of Judicial Notice*

As noted above, the court imposed $75,000 in sanctions. This figure was based entirely on Steven's July 18, 2016, income and expense declaration, wherein he stated he had paid $75,000 in attorney fees. However, this declaration was not admitted into evidence. A declaration is not automatically received into evidence merely because it has

17.

been filed with the court. (*In re Marriage of Shimkus*, *supra*, 244 Cal.App.4th at p. 1271.) "[A]s with any evidence, a declaration must be marked and offered and is subject to objections before admission." (*Ibid.*)

Nor did the court properly take judicial notice of the declaration. A court may take judicial notice of its files on its own motion. (Evid. Code, § 452, subd. (d); see also Evid. Code, § 300.) However, if the matters of which it takes judicial notice are "of substantial consequence to the determination of the action," the court must follow a specific procedure. (Evid. Code, § 455.) "If the trial court … has taken … judicial notice of such matter, the court shall afford each party reasonable opportunity … before the cause is submitted for decision by the court, to present to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed." (*Id.*, subd. (a).) That did not occur here.

It was error for the court to consider a declaration that had not been admitted into evidence or properly subjected to judicial notice. As a result, Kellee was not afforded a full and proper opportunity to "meet" this evidence.[15] If the declaration had been offered into evidence, Kellee might have objected to its admissibility. Alternatively, if the court had followed the judicial notice procedures of Evidence Code section 455, subdivision (a), then Kellee could have "present[ed] to the court information relevant to (1) the propriety of taking judicial notice of the matter and (2) the tenor of the matter to be noticed." (Evid. Code, § 455, subd. (a).) Because Kellee was not properly afforded the opportunity to meet this evidence, and the evidence was the sole grounds for the court's sanctions calculation, we cannot say it is reasonably probable she would not have obtained a more favorable result absent the error.

Accordingly, we will reverse the sanctions order and remand for a new hearing to determine the amount of sanctions. The amount must be based upon evidence that has

---

[15] On remand, Kellee may argue and the court may consider what portion of Steven's attorney fees are attributable to Kellee's breaches of fiduciary duty.

been properly admitted or upon matters of which judicial notice has been properly taken. Nothing in this opinion prevents Steven from having the income and expense declaration admitted into evidence on remand. The court may again award sanctions to Steven so long as such sanctions are supported by admitted evidence and/or matters of which judicial notice is properly taken.

## DISPOSITION

The 2014 order invalidating the promissory note, marital settlement agreement, and deed of trust is affirmed.

The 2017 judgment is affirmed in part and reversed in part. The portions of the judgment characterizing the Cadet Road Property as Steven's separate property and finding that Steven is entitled to sanctions are affirmed. The portion of the judgment setting the amount of sanctions at $75,000 is vacated. The matter is remanded for an evidentiary hearing to determine the amount of sanctions in accordance with the views expressed in this opinion.

Each party shall bear their own costs on appeal.


POOCHIGIAN, J.

WE CONCUR:


HILL, P.J.


PEÑA, J.


19.