Filed 11/18/22  Marriage of Wu and Zhai CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of HARRY WU and XIAOMEI ZHAI.<br>_____<br><br>HARRY WU,<br><br>     Respondent,<br><br>     v.<br><br>XIAOMEI ZHAI,<br><br>     Appellant. | H048885<br>(Santa Clara County<br> Super. Ct. No. 2011-6-FL-006290) |

This appeal arises from the dissolution of marriage of respondent Harry Wu and appellant Xiaomei Zhai.  Zhai appeals from the trial court's January 21, 2021, judgment following trial on September 1, 2020.  Zhai contends the trial court erred by (1) refusing Zhai's request to continue the trial so she could retain new counsel; (2) disregarding relevant testimony and evidence regarding Zhai's mental health and efforts to find employment; and (3) neglecting to consider the admissibility of Zhai's evidence regarding Wu's fraudulent statements regarding community property assets.  We affirm the trial court's order.

## I. BACKGROUND

Wu and Zhai were married for approximately 21 years. They married in October 1989 and separated in January 2011 but continued to cohabit. Wu petitioned for dissolution in 2011 and filed two amended petitions in 2012. He remarried in 2013 after obtaining a default judgment in November 2012. The 2012 default judgment terminated the court's jurisdiction to award Wu spousal support but reserved all other issues of support and property division; it also provided for joint legal and joint physical custody of the parties' two minor children, specifying no parenting schedule because the parties continued to live together.

Zhai did not appear in the case until March 2019, when (with the assistance of her present appellate counsel) she filed a request for order alleging that Wu had kept her in the dark regarding the 2012 dissolution proceedings until late 2015, when he disclosed his remarriage, eventually moving out of the marital residence in early 2016. Zhai acknowledged, however, that on two separate occasions in 2012, strangers had hand-delivered papers to her, which she did not open or read. Zhai did not seek to set aside the judgment but requested sole legal and physical custody of their child; child support and spousal support retroactive to November 2012; an order that Wu continue paying the mortgage on the home she occupied; equal division of the real properties she conceded were community property; confirmation of other properties as her separate property by virtue of unspecified agreements.

After Zhai's first attorney withdrew in September 2019, Zhai remained unrepresented for several months.

In February 2020, while Zhai was representing herself, the court set the matter for a May 2020 trial, with a one-day time estimate. In setting the trial date, the court found that Zhai had not complied with the court's January 2020 order that she serve her Preliminary Declaration of Disclosure within 20 days.

2

Zhai retained her second attorney, Wendy Lun, who first appeared in the case within a week before the May 2020 trial date. The day before the scheduled trial, Zhai filed an ex parte request seeking emergency relief of some kind not apparent on this record. The trial did not go forward as originally scheduled.

The next scheduled trial date was August 5, 2020. Zhai, however, discharged her second attorney the week before. On the day set for trial, the matter was continued again to September 1, 2020.

Zhai retained her third attorney, James Hann, in mid-August 2020. In late August 2020, Zhai filed an ex parte request to continue the trial. Three days before trial, Hann withdrew as counsel.

On September 1, 2020, the court denied the request to continue the trial, finding that Zhai had not demonstrated good cause, and proceeded with the trial. Zhai therefore represented herself, assisted by two Mandarin-language court interpreters. By the time of trial, Wu and Zhai had one minor child, then age 13. Between them, Wu and Zhai owned three real properties—a house in Santa Clara, CA, and two properties in Boise, ID.

Early in the trial, the court explained to Zhai: "[Wu] is going to present his evidence. . . . [¶] When [Wu] finishes that, you have the opportunity to cross-examine [him], to ask them questions as well. When you are done with that, you have the opportunity to present evidence."

Represented by counsel, Wu proceeded by offer of proof consisting largely of a series of proposals for the division or disposition of each asset, with some supporting representations as to the date, time, manner, or funds by which the property was acquired. Wu's offer of proof included that Zhai had persisted in her refusal to serve a code-compliant Preliminary Declaration of Disclosure or Final Declaration of Disclosure—

3

despite the requirements of Family Code section 2100[1] et seq. and express court orders to do so—and failed to respond to form interrogatories.

After Wu's counsel completed her presentation, the court explained to Zhai: "You have the right to cross-examination of [Wu]. You also have the right to present evidence. [¶] The Court is mainly interested in what you have by way of evidence. That evidence can be your testimony or it can be documents – whatever you want. But I'm going to ask that in order for me to make a ruling, I want to clearly understand your side of the story. So I want you to go down the same categories that [Wu's counsel] did." The court explained to Zhai what it meant by "cross-examination," to which Zhai stated: "I don't have to question first. I just want to present my facts." The court then asked Zhai to first address the division of the parties' real property.

The court suggested to Zhai that she proceed by addressing "the same sequence of issues" that Wu's counsel had, adding "I want to hear from you on each and every one of those areas." The court suggested she begin with the parties' real properties.

After Zhai began by addressing the limited square footage of the Santa Clara house and the fact that the parties' sons also lived there with her after Wu left in 2016, the court attempted to redirect her to Wu's proposal for its sale and equal division of the proceeds. The court explained that "[w]hat we have to do today is decide what's going to happen to the real property, the bank accounts, everything." The court then asked Zhai about the parties' specific properties and asked whether she agreed or disagreed with Wu's proposed disposition of each. Zhai repeatedly stated she disagreed but provided no reason for her disagreement other than to assert that, if the court reviewed her evidence, he would understand. When the court asked about her evidence, Zhai responded that she would prove Wu's "deceit in the divorce." The court observed that Zhai was holding up

---

[1] Undesignated statutory references are to the Family Code.

4

a piece of paper and asked her to identify it; Zhai answered that it was a grant deed[2] from January 3, 2016, in which Wu had reportedly characterized the parties as "husband and wife." The court noted that this was not relevant to whether the property should be sold and equally divided.

The court again explained: "I am giving you the opportunity to say that the division of assets is not fair to you, if you have any reason to say that. . . . [¶] [Wu] has made a comprehensive set of proposals for orders on how all of these assets are to be divided between you and [Wu]. If you have a reason why I should not divide the assets . . . in accordance with [his] proposal, tell me the reasons right now. [¶] If you do not provide me any reasons not to do it, I would approve [his] proposed division. And I would need something more specific than vague allegations of fraud." The court further explained: "The law requires that assets be equally divided when the marriage is over and the assets are to be distributed. . . . It appears to me that what [Wu] has proposed is absolutely an equal division of assets. If you believe it is not an equal division of assets, you need to tell me that and explain why you believe that. You failed to do that so far."

Zhai responded by restating her grievances with her prior counsel and asserting generally "that's why I didn't know I was supposed to present this evidence." Zhai said: "What I have here is all the evidence. I beg your Honor to give me the opportunity to present to you all the materials. . . . [¶] . . . [¶] Read the whole thing." She did not describe what her materials consisted of, but she later stated that she "object[ed] to everything, every proposal" of Wu's.

The trial court then questioned Zhai about her work history. Zhai initially testified that she had not worked since March 2020, due to the pandemic, and had only unemployment insurance income, but she later acknowledged that as of her filing of an Income and Expense Declaration in May 2020, she was working 24 hours per week at

---

[2] Zhai did not identify what property was the subject of the grant deed.

5

$15 per hour. Asked what efforts she had made to find work, Zhai answered only that she was "looking . . . but everything is closed." Even before the pandemic, Zhai had been working only part time. Asked how she was meeting her expenses—estimated to be $6,839 per month in March 2020—Zhai cited only her unemployment insurance; temporary spousal support at the time was $2,519.

After a recess, and the court's query whether she had any further evidence on the subject of support, Zhai reiterated that she needed more time, because she was not an attorney, did not have legal representation, and did not understand English. When Zhai offered no more evidence or testimony, the court allowed Wu's counsel to begin cross-examination. But after counsel's second question, Zhai announced: "Right now I don't want to answer any questions from [Wu's] attorney, because . . . I am not familiar with the law."

The trial court then turned to the parties' documentary evidence. As each of Wu's 15 exhibits was marked for identification, the trial judge asked Zhai if she objected to its admission. Zhai objected that Wu and his counsel were lying, and all their evidence fabricated. The court observed that Zhai had never opened the binder of exhibits Wu's counsel had provided her. Zhai then asked the court why it was "consider[ing] only evidence presented by my ex-husband but not all the true evidence?" The court responded: "There's nothing there to respond to. I would rule on the exhibits that are provided."

After ruling on the admissibility of Wu's exhibits, the court told Zhai, "This is your opportunity to present [documentary] evidence . . . ." In lieu of documents, Zhai returned to the subject of Wu's conflicting characterization of his marital status in 2013 and the 2016 grant deed. When Wu's counsel objected on the ground that the date of separation had previously been adjudicated, the trial court explained to counsel that, despite a lack of coherence in Zhai's presentation, "I want to give her an opportunity to go ahead and present to the Court whatever she wants. [¶] I am going to allot

6

approximately 15 minutes for this purpose. She may use that 15 minutes in any manner that she wants, and then the Court is going to move on and make rulings. [¶] But during this period of time, I am going to not strictly follow the rules of evidence that would preclude everything that she is saying. I'm going to give her some leeway just as a matter of courtesy."

At the conclusion of Zhai's final comments, the trial court proceeded to make findings. The court agreed with Wu that it would be futile to further order code-compliant Preliminary and Final Declarations of Disclosure from Zhai. The court ordered that two of the parties' real properties be sold, with the proceeds held in trust pending resolution of reimbursement claims against those properties and the balance equally divided, and that a third property be confirmed as Wu's sole and separate property because he purchased it subsequent to the divorce. The court ordered division of the different financial funds as requested by Wu. Zhai received the educational funds, the bank accounts in her name, and the National Life insurance; Wu received the bank accounts in his name, his 401K, and the Fidelity rollover IRA. With an equalizing payment from Zhai to Wu to compensate for the excess values of the accounts awarded to Zhai, the court's division of assets resulted in a roughly equal split, with each party to receive assets valued in the hundreds of thousands. The court assessed *Watts*[3] charges payable to Wu for Zhai's post-separation use of the marital residence, in addition to *Epstein*[4] credits for Wu's post-separation payments of mortgage principal.

The trial court found that Zhai's conduct was "consistent with actively concealing community assets and bank accounts in her name" and that she had failed to disclose information regarding those in violation of the Family Code. It also found a "consistent pattern by [Zhai] to obstruct the efficient administration of [the] case and block the

---

[3] *In re Marriage of Watts* (1985) 171 Cal.App.3d 366.

[4] *In re Marriage of Epstein* (1979) 24 Cal.3d 76.

7

attempts for the economic resolution of the family law issues . . . in [the] case." It therefore ordered her to pay section 271 sanctions in the amount of $20,000 to Wu.

For the purpose of guideline child support, the court found that Zhai earned a minimum of $40,000 each year from 2011 to 2018. It therefore imputed income to Zhai of $40,000 per year.

The court noted the particular difficulty of determining spousal support for this long-term marriage. It addressed each of the factors in section 4320. In evaluating the factors, the court found Zhai had marketable skills to work in an office setting. The court also found the parties were both in good health with no significant health issues that would impair earning capacity.

The court rejected Wu's request that spousal support be set at zero or no more than $1,000 per month, and further rejected his request to exercise the court's reserved jurisdiction to retroactively modify temporary guideline child and spousal support based on the income it was prospectively imputing to Zhai. Instead, it ordered long-term spousal support initially at $2,000 per month in year one, $1,500 per month in year two, and $1,000 per month in years three through six.

The trial court issued its written judgment on January 21, 2021. Zhai timely appealed.

## II.     DISCUSSION[5]

Zhai contends the trial court made three errors:  (1) denying Zhai's request for a continuance to retain a fourth attorney; (2) disregarding relevant testimony and evidence regarding Zhai's mental health and efforts to find employment; and (3) neglecting to consider the admissibility of Zhai's evidence regarding Wu's fraudulent statements regarding community property assets.  Under our deferential standard of review, we are unable to conclude that the trial court abused its discretion in denying Zhai's late request to continue the trial or in its management of Zhai's inability to present her evidence.

### A.     *Self-Represented Litigants, the Record on Appeal, and Standard of Review*

The California Supreme Court has recognized the challenges facing self-represented litigants in the trial court, particularly in " '[d]omestic relations litigation, one of the most important and sensitive tasks a judge faces . . . .' [Citation.]" (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1366 (*Elkins*).)  The trial court is expected to both "dispose of matters promptly and efficiently" while also "provid[ing] all litigants the opportunity to have their matter fairly adjudicated in accordance with the law." (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 41, fn. 14, italics omitted (*Knox*).) " '[W]hen a litigant is self-represented, a judge has the discretion to take reasonable steps, appropriate under the circumstances and consistent with the law and the canons, to enable the litigant to be heard.  [Citation.]' " (*Ibid.*, italics omitted.)

---

[5] We deny Wu's motion to augment the record with the (1) Petitioner's Trial Brief filed on August 5, 2020, and (2) the Reporter's Transcript of Proceedings from May 12, 2020.  The trial brief is already included in the Respondent's Appendix.  Wu seeks to augment with the transcript on the ground that a deputy district attorney had appeared at the hearing and disputed Zhai's claimed inability to speak English.  The deputy district attorney's statements are hearsay, and her opinion of Zhai's English proficiency appears to be based on further hearsay from a district attorney investigator. (See *In re Vicks* (2013) 56 Cal.4th 274, 314 [judicial notice of documents does not extend to the truth of included hearsay statements].)

9

Yet the court is also required " 'when engaging in such activities to avoid becoming an advocate and stepping out of the judicial role.' [Citation.]" (*Knox*, *supra*, 83 Cal.App.5th at p. 41, fn. 14.) Self-represented litigants "are held to the same standards as attorneys." (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543; see also *Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1270 ["self-represented litigants are generally entitled to no special treatment"].) "[M]ere self-representation is not a ground for exceptionally lenient treatment." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984.) Otherwise, "exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Id*. at p. 985.)

On appeal, it is well settled that " '[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The appellant bears the burden of providing an adequate record. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) Where the appellant fails to do so, a reviewing court is required to resolve the matter against the appellant. (*Id*. at pp. 1295-1296.) As "a natural and logical corollary to [these] fundamental principles of appellate review," we "infer the trial court made all factual findings necessary to support the judgment." (*Fladeboe v. American Isuzu Motors, Inc*. (2007) 150 Cal.App.4th 42, 58 (*Fladeboe*).)

Trial courts also enjoy broad discretion as to the specific types of decisions Zhai challenges on appeal. (See *Schlothan v. Rusalem* (1953) 41 Cal. 2d 414, 417 ["The granting or refusal of a continuance is a matter of discretion with the trial court and its ruling will not ordinarily be disturbed."]; *In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 424 [" ' " 'appellate courts must act with cautious judicial restraint' " ' " in review of trial courts' " ' " 'broad discretion' " ' " in ordering spousal support]; *In re Marriage of Barth* (2012) 210 Cal.App.4th 363, 375 (*Barth*) [imputation

10

of income available for child support "is also reviewed for abuse of discretion"]; *People v. Dworak* (2021) 11 Cal.5th 881, 895 ["We review the trial court's decision to admit or exclude evidence for abuse of discretion."].) We review for substantial evidence the trial court's express or implied factual findings. (See, e.g., *In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1337.) And even where the record discloses error, an appellant has the burden of establishing a reasonable probability of a more favorable result to the appellant, absent the error. (Cal. Const., art. VI, § 13; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548.)

With these principles in mind, we turn to the merits of Zhai's claims.

**B.** ***Request to Continue Trial***

It is well established that, "[t]o ensure the prompt disposition of civil cases, the dates assigned for a trial are firm. All parties and their counsel must regard the date set for trial as certain." (Cal. Rules of Court, rule 3.1332(a).) "Continuances are granted only on an affirmative showing of good cause requiring a continuance. [Citations.] Reviewing courts must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823.) The record reflects that Zhai was ill equipped to proceed at the September trial date, but she cites no authority for the proposition that it is her actual readiness that must control, rather than the existence of the requisite good cause for her lack of readiness.

Assuming that the basis for the continuance request was that Zhai's counsel needed additional time to prepare for trial, as Zhai contends on appeal, we are nonetheless unable to conclude that the trial court abused its discretion in denying the request, absent an adequate showing of Zhai's diligence to that point. Because Zhai did not include the request for the continuance in the appellate court record, we do not know what showing Hann made in his supporting declaration, if any, as to the reasons Zhai would be unable to proceed as scheduled. " '[I]f the record is inadequate for meaningful

11

review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416; *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)

At trial, Zhai faulted her prior counsel for her predicament, asserting that "[e]ven with the trial days away, neither Lun nor Hann prepared basic materials such as a trial brief or exhibit binder for her presentation." The record, however, does not compel such a conclusion. Lun first appeared in the case less than a week before the initially set May trial date, and Zhai discharged her a week before the August trial date and over a month before the September trial date. That Lun had not yet prepared a trial brief or exhibit binder by the time of her discharge did not compel the conclusion she was dilatory: Wu's counsel, after all, did not submit Wu's trial brief or exhibit list until the August trial date itself. Zhai then delayed retaining successor counsel until two weeks before the September trial, leaving him little time to familiarize himself with the history of the case and the evidence which Zhai maintains she possessed. There is accordingly nothing in the record that substantiates Zhai's assertion "that [counsel] had been absent in her case to the point of jeopardizing her interests." To the extent the trial court implicitly found no basis to fault either attorney for Zhai's lack of readiness, we discern no basis in the record to question that finding.

Indeed, given this tumult in Zhai's representation, the trial court could have determined that it was Zhai's late decision to fire Lun and even later decision to retain Hann that impeded her readiness. The trial court could likewise have determined that Zhai's complaints regarding Lun and Hann were unreasonable, or even that these complaints furthered a pattern of obstruction, delay, or denial suggested by her failure— while representing herself—to comply with statutory or judicial directives to serve her Preliminary Declaration of Disclosure or to respond to form interrogatories.

12

We note as well that Zhai was representing herself in February 2020, when the financial issues raised by her 2019 request for order were set for trial.[6]  Zhai therefore had more than six months to prepare for the litigation she had initiated—after having known of the dissolution proceedings since 2015, by her account.  We acknowledge that she was entitled to rely upon the assistance of counsel for the period that she was represented, but Zhai cites no authority for the proposition that representation at times by counsel absolved her of *all* responsibility to be ready for trial or to at least demonstrate her own diligence.  As a general principle, "[f]or our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 214.)  On this procedural history, we are unable to fault the trial court to the extent it doubted that granting Zhai additional time would lead to readiness.

In the cases Zhai cites in her opening brief to support her claim of good cause for a continuance, the reason for the delay was the attorney's serious illness.  (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 711 [admission to hospital for removal of cancerous bladder]; *Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242, 1244 [counsel's physical illness its debilitating effects culminating in death during the final stage of litigation].)  It was not, however, illness that made counsel unavailable to Zhai, but Zhai's election to discharge her counsel a month before trial, without a readily available successor.

Because the record does not establish that Zhai met her burden of establishing good cause for a continuance, we are unable to conclude that the trial court abused its discretion in denying the request.

---

[6] Although the trial court alluded to the COVID-19 pandemic having delayed the proceedings, it is not otherwise apparent from the record Zhai has designated what other factors, if any, contributed to the delay to September 2020.

13

**C.**     *Evidence Regarding Mental Health and Efforts to Find Employment*

A trial court issuing an order for spousal support is vested with broad discretion to evaluate the factors identified in section 4320 " ' "with the goal of accomplishing substantial justice for the parties in the case before it." ' " (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 108.)  Although child support is subject to a mandatory uniform guideline, "[t]he court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income . . . ." (Fam. Code, § 4058, subd. (b)(1); see also *Barth*, *supra*, 210 Cal.App.4th at p. 375.)  Zhai contends that the trial court abused this discretion by (1) failing to receive or adequately consider evidence of her depression, and (2) giving insufficient weight to her current actual earnings, as opposed to her minimum earnings from 2011 to 2018.  She does not meet her burden of establishing error on this record.

**1.**     *Mental Health*

Among the factors a trial court shall consider in ordering spousal support is the "age and health of the parties." (Fam. Code, § 4320, subd. (h).)  Here, the trial court found that "both parties have good health at the present time with no significant health issues that would impair earning capacity."  Zhai argues that she has chronic and debilitating mental health issues that hamper her ability to support herself, and that the trial court failed to consider her evidence on this point.  Her claim on appeal relates principally to what she contends was the trial court's erroneous failure to admit a doctor's report she represents would corroborate her testimony about her mental condition.

During her allotted time, Zhai repeatedly alluded to evidence in her possession, typically without identifying what it consisted of.  At the conclusion of her argument, Zhai mentioned for the first time that she had a doctor's report.  The trial judge did not respond other than to state that Zhai had adequate time to present her evidence.[7]  Zhai did

---

[7] The reporter's transcript states that Zhai had "adequate evidence" to present her evidence.  This appears to be either a misstatement or an error of transcription.

14

not ask that the report be admitted into the record. On appeal, she states that she did not understand procedural rules, and therefore had no way to request the admission into evidence of the exhibits that she brought with her.

"[I]t [is] ethically permissible for the family court to explain . . . the procedures for the admission of a document into evidence. [Citation.]" (*Knox*, *supra*, 83 Cal.App.5th at p. 41, fn. 14.) Zhai cites to no authority, however, for the proposition that the trial court committed error by omitting to do so here. On this record, the trial court was free to conclude that the report, though relevant, was hearsay and that Zhai would not be able to properly lay a foundation for its admission. Even where litigants are self-represented, "it is well settled that the ordinary rules of evidence apply in marital dissolution trials." (*Elkins*, *supra*, 41 Cal.4th at p. 1362.) Moreover, to the extent that Zhai nonetheless believed that it should be admitted, she "needed to move to do so or seek a stipulation for admission." (*In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1270 (*Shimkus*).) Because Zhai never asked that the doctor's report (or any other documents) be admitted, Wu's counsel never made an objection, and the trial court never ruled on admissibility. And because Zhai never properly identified her documentary evidence, it is not part of the appellate record. "Where exhibits are missing, we will not presume they would undermine the judgment." (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291.)

The trial court, it is true, could have been more proactive in explaining to Zhai the mechanics of marking and identifying an exhibit and offering it into evidence. It certainly had the discretion to inquire about the document from Zhai's doctor, to direct Zhai as to the process of laying a foundation for it to be admitted into evidence, or to examine the document (subject to Wu's inspection) to ascertain its admissibility or ask foundational questions. (See *Knox*, *supra*, 83 Cal.App.5th at p. 41, fn. 14.) Although other reasonable trial judges might well have exercised their discretion differently, on appeal we do not substitute our judgment for that of the trial court, and we do not find the

15

court abused its discretion in abstaining from further embroilment in an effort the trial court may legitimately have found to be fruitless.

The trial court did hear Zhai's oral testimony regarding her depression, her visits to doctors and psychologists, and her medication.  Under the doctrine of implied findings, however, we infer the trial court made all factual findings necessary to support the judgment.  (See *Fladeboe*, *supra*, 150 Cal.App.4th at p. 58.)  The trial court was not required to credit Zhai's testimony:  based on Zhai's earnings from late 2015 to 2018—after she reportedly learned of the 2012 default judgment and Wu's remarriage for the first time, and largely after Wu left the marital residence—the court could legitimately have concluded that it was not the emotional trauma of the parties' dissolution but, at most, the immediate demands of the present litigation that were temporarily impacting Zhai's actual earnings.

To the extent Zhai on appeal suggests that public policy or the trial court's unwillingness to further assist her in the presentation of her evidence warrants reversal without a showing of prejudice, the weight of authority is against her.  "[A] judgment may not be reversed for the erroneous exclusion of evidence unless 'the substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means.'  [Citations.]  This rule is necessary because, among other things, the reviewing court must know the substance of the excluded evidence in order to assess prejudice."  (*People v. Anderson* (2001) 25 Cal.4th 543, 580; Evid. Code, § 354, subd. (a).)  There can be no reversal "unless an error was prejudicial and a different result was likely in the absence of the error.  Prejudice is not presumed."  (*Shimkus*, *supra*, 244 Cal.App.4th at p. 1269.)

### 2.    *Employment*

The trial court imputed an income of $40,000 to Zhai for purposes of calculating guideline child support and evaluating the section 4320 criteria for long-term spousal support.  This was based on Wu's evidence that Zhai had made a minimum of $40,000

per year from 2011 through 2018, and that her reported income declined only when Zhai filed her 2019 request for order. The court also found that Zhai had not complied with her duty to make reasonable efforts to be self-supporting in a reasonable period of time. In the trial court's exercise of its broad discretion to set long-term spousal support, "[w]here a factual basis exists for imputing income based on earning capacity, . . . there is legal authority to do so." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 301.) In calculating child support, "[i]f a parent is unwilling to work despite the ability and the opportunity, earning capacity may be imputed." (*In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1338.)

Zhai argues that the record shows that she was unable to earn her historical minimum annual salary of $40,000 due to circumstances beyond her control. She relies instead on her most recent actual monthly earnings of $1,000, "a figure that Wu did not contradict." But she fails to support her assumption that her actual income—rather than the income she reasonably could be making—should be dispositive.

The trial court found that Zhai "has marketable skills for which there is a job market and she does not require further education, training, or retraining" and that "[Zhai's] tax records indicate that [Zhai] has marketable skills to work in an office setting that is consistent with the amount of income that the Court has imputed to [Zhai] . . . ." This finding was supported by substantial evidence. Wu's Exhibit 5, admitted into evidence at the trial, included Zhai's income and expense declarations, which showed that she has a bachelor's degree and is a licensed life insurance agent. Zhai cites her limited English fluency as a factor reducing her earning capacity, but at trial she did not rebut Wu's evidence that Zhai had worked in customer service, in sales, and as a teacher, and had historical earnings of $40,000 for the seven years prior to her 2019 request for support orders.

On this record, the trial court had evidence before it regarding Zhai's qualifications, work history, and earnings on which it could reasonably rely in

17

determining that Zhai had the ability and opportunity to work. Zhai gave the court no reason to give more weight to the fact that she was not actually working than to the years of her work history. We conclude the court did not abuse its discretion by imputing that income to her.

**D.**     *Admissibility of Evidence Regarding Fraudulent Statements*

Zhai contends that the trial court failed to admit evidence at trial pertaining to what she characterizes as Wu's extrinsic fraud. She points to her claim at trial that Wu committed tax fraud, by claiming their child as a dependent and nominally attributing all community rental income only to Zhai in his preparation of her 2018 tax return, which increased her tax liability. She also states that she testified to Wu's entitlement to retirement funds with the Canada Pension Plan, which he denied.

Zhai's contentions—taken at face value—do not describe extrinsic fraud. Extrinsic fraud is a ground for relief from an otherwise final judgment. (*Caldwell v. Taylor* (1933) 218 Cal. 471, 477.) But "[f]raud is extrinsic where the defrauded party was deprived of the opportunity to present their claim or defense to the court, that is, where they were kept in ignorance or in some other manner, other than from their own conduct, fraudulently prevented from fully participating in the proceeding." (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1068; see also *In re Marriage of Jones* (1987) 195 Cal.App.3d 1097, 1102 ["Extrinsic fraud has been found when parties, in good faith, rely upon the fraudulent representations of their spouse resulting in their not acting to protect their interests."].) Zhai has not sought to set aside the 2012 default judgment, which merely reserved to a future date the characterization, valuation, and division of the parties' property as well as the propriety of child and spousal support payable by Wu to Zhai. Zhai does not contend that any of the fraudulent activity she attributes to Wu prevented her from presenting her claims and defenses at the September 2020 trial.

18

To the extent Zhai's allegation as to community rental income or the concealment of a pension benefit describe either a breach of fiduciary duties under section 1100 et seq. or merely a claim for her 50 percent interest in the 2018 rental income, Zhai never attempted to quantify for the trial court the relief she sought or rebut any inference suggested by Wu's evidence that rental income had reverted to her by paying down her share of community expenses or her separate expenses. Coupled as it was with her related claim of Wu's tax fraud for claiming a dependent exemption for their remaining minor child, the trial court could properly construe Zhai's complaint about the rental income to be about assailing Wu's credibility as a witness (or parent) and not a claim for recovery of a half-interest in community income Zhai was on notice of at least as of her 2018 tax filing.

As for an interest in a Canadian pension, Zhai did not testify that Wu had a Canadian pension or seek to admit evidence of such an asset. Rather, she surmised that he might have such an interest, by virtue of his having lived in Canada for 10 years. Because she had no competent evidence of such an asset, she asked the trial court to order Wu "to produce evidence" of his Canadian tax returns. This again the trial court was entitled to interpret as a plea to continue the remainder of the trial.

During trial Zhai repeatedly made assertions of fraud by Wu, but she provided no reasoned or factual basis to support these assertions. At one point, the trial court acknowledged her fraud arguments and gave her a chance to explain: "What you are telling me is that you have brought allegations of fraud that you have not backed up. [¶] I am giving you the opportunity to say that the division of assets is not fair to you, if you have any reason to say that." In response, Zhai provided no specific argument or evidence, other than to assert that she had "all the evidence" but that her prior counsel had not adequately assisted her in preparing to present "all the materials." In this context, we understand Zhai's entreaty for an "opportunity to present to you all the materials" to be a renewed request to continue to the trial, rather than a proffer of specific evidence.

19

There is nothing in the trial court record, or in the record on appeal, that would allow us to conclude that there was fraud or that the trial court abused its discretion by somehow refusing to admit evidence of fraud that was never actually proffered. The only document Zhai ever identified as the trial court attempted to focus her presentation was a 2016 grant deed in which Wu reportedly identified the parties as husband and wife in connection with the property at issue. Nothing in Zhai's proffer substantiates the assertion of fraud: the parties in fact continued to hold real property as husband and wife as of the September 2020 trial date, the very purpose of which was to unwind the community estate.

Even assuming that other, unidentified evidence in Zhai's possession would have substantiated her claim that Wu deceived her regarding his remarriage and the 2012 default judgment, the trial court was within its discretion to conclude that nothing in Zhai's claims as stated in her 2019 pleadings—prepared with the assistance of her current counsel—identified any basis by which we could discern prejudice. She does not dispute that Wu paid for improvements to the Santa Clara community residence that she occupied without him, and that this payment was in 2016—after the date she acknowledges actual notice of the 2012 default judgment, and after the parties' physical separation. There is no dispute that the grant deed post-dated Zhai's knowledge of the 2012 default judgment and the parties' physical separation.

To the extent Zhai claims extrinsic fraud and breach of fiduciary duty, nothing in the record establishes that Wu or the trial court were on notice of these claims.

## III.    DISPOSITION

The judgment is affirmed. Wu is entitled to his costs on appeal.

20

_____

LIE, J.

WE CONCUR:


_____

GROVER, ACTING P.J.


_____

DANNER, J.


*Wu v. Zhai*
H048885