Filed 10/29/24  Marriage of Cho and Wong CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of SOYON ELIZABETH CHO and CLARENCE CLIFFORD WONG. | D082124 |
| SOYON ELIZABETH CHO, Appellant, v. CLARENCE CLIFFORD WONG, Appellant. | (Super. Ct. No. DN182247) |

APPEAL from an order of the Superior Court of San Diego County, Daniel Segura, Judge.  Affirmed.

Cage & Miles and John T. Sylvester for Appellant Soyon Elizabeth Cho.

Stephen Temko for Appellant Clarence Clifford Wong.

Soyon Elizabeth Cho (Wife) appeals from an order granting a request by her ex-husband Clarence Clifford Wong (Husband) to modify spousal support.  The trial court decreased Husband's monthly spousal support payment to $1,250, from a previously modified amount of $2,315, which was premised on Wife's pandemic-related drop in income.  Wife contends (1) the

trial court improperly ordered a downward modification of spousal support in the absence of a finding of changed circumstances; and (2) the order reducing spousal support to $1,250 should be reversed because the trial court improperly applied the factors set forth in Family Code section 4320.[1]

We conclude that Wife's contentions lack merit, and we accordingly affirm the order modifying spousal support. Husband has filed a protective cross appeal, which we deny as moot.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Wife and Husband were married on September 15, 2001, and separated 12 years, eight months later, on June 1, 2014. Their two children were born in 2004 and 2007. A judgment of dissolution was entered on August 8, 2015. At that time, according to the parties' stipulation, Husband's income was $17,831, per month, including base income, stock options and bonus, and Wife's income was $1,400 per month. Starting January 1, 2016, Husband was ordered to pay $2,984 per month in spousal support. Wife was awarded the family home, including approximately $600,000 in equity, which she subsequently sold, using the proceeds to buy a different home.[2]

In November 2019, Husband sought an order modifying spousal support downward based on changed circumstances, including a change in

---

[1]     Unless otherwise indicated, all further statutory references are to the Family Code.

[2]     Wife testified that she bought her current home for between $800,000 to $850,000. At a March 2023 hearing, it appeared to be undisputed that Wife's current home had significantly appreciated in value, with a value well over $1 million, and that Wife owed $283,816.13 on her mortgage. Wife's monthly mortgage payments were $1,532, and her monthly property tax expenses were $917.

2

child custody arrangements that would allow Wife to work full time. The trial court modified spousal support downward to $1,525 per month, effective November 15, 2019. The order was based on a finding that Husband's net monthly income was $11,087, and Wife's net monthly income was $2,666. Included in the calculation of Wife's net monthly income was a finding that Wife's monthly income from her employment was $3,500.

In July 2020, Wife sought an order increasing spousal support due to her reduced income caused by the pandemic. In a ruling filed December 2020, the trial court found that Wife's monthly net income had been reduced to $1,404, and it increased spousal support to $2,550 per month. Later, due to Husband's motion for reconsideration pointing out an error in calculating the parties' income, the trial court issued an order on September 13, 2021, revising the amount of spousal support to $2,315, effective retroactively to August 1, 2020. The September 13, 2021 order found that Husband's net monthly income was $12,136, and Wife's net monthly income was $1,485. Wife's income from self-employment was $1,560, and her other taxable income was $73.

The instant appeal is a result of Husband's request to modify spousal support downward from $2,315. The trial court held hearings in September 2022, and February and March 2023.[3] At a September 2022 hearing, it was established that Husband's monthly income from employment was $15,807, and Wife's monthly income was now $4,656, which included a salary of $4,333 per month, and other taxable income of $323. Wife had been working full time at her current employer since October 2021 and had overcome the

---

[3]    Husband's request to modify spousal support was filed in April 2021 but was not ultimately ruled upon until March 2023.

temporary drop in income caused by the pandemic. An updated filing in February 2023 showed Wife's wages and other taxable income remained at the same increased level. Husband's updated filing in February 2023, showed monthly income from employment of $15,725, as well as other income.[4]

In his briefing, Husband took the position that spousal support should be terminated or that a step-down order should be made to eventually terminate support. At the conclusion of the February 15, 2023 hearing, the trial court said it intended to institute a step-down of spousal support to zero over the course of three years, starting in January 2024.[5] However, at the request of Wife's counsel, the court allowed further briefing and argument on the issue before making a final decision.

At the March 17, 2023 hearing, the parties presented further argument, with Wife's counsel advocating against the step-down order. During the hearing, Husband's counsel pointed out that the previous spousal support order was based on Wife's reduced income due to the pandemic, but that "[o]nce she found full-time employment [in October 2021], she now earns more than she did before she lost the full-time job which means the spousal support should go back to what it was or less" (i.e., $1,525 per month). The trial court responded by stating that Wife's increased income after the

_____

[4] We note that Husband also had variable employment income, which was the subject of ongoing proceedings in the trial court, including a stipulation between the parties on March 17, 2023. Among other things, the parties' stipulation states that Wife will receive future additional child support payments based on Husband's variable income according to a specific formula.

[5] The trial court described the step-down as follows: "[S]tarting in January of 2024, it's going to reduce to [$]1,500. And then beginning 2025, to [$]750 a month. And then the beginning of 2026, it will be set at zero.

4

pandemic "alone may justify a modification of the [spousal support] amount." When the trial court asked Wife's counsel to comment on that subject, she stated "I don't dispute the fact that [Wife's] income has increased since the last order was put in place is a basis for the Court to consider modification."

Later in the hearing, the trial court indicated that it was not inclined to issue a step-down order as it had previously intended. The trial court explained, "My main reason for that . . . is really that ultimately when we have someone who's in a job that hasn't been in that job for a significant period of time, and given what her age is and what the job is, I'm not confident it's the type of job that she could easily replace if she got laid off or wasn't able to work there anymore or whatever it was." The trial court then asked counsel to address what the new spousal support order should be if the court modified support due to Wife's increased income, rather than issuing a step-down order.[6] Wife's counsel stated, "If the court's inclination is to modify the support based on her increase in income, we would just argue and request that it be -- I don't want to say proportionate because it shouldn't be a dollar for dollar reduction. But I think it needs to be reasonable in terms of the reduction. So essentially look at what she was earning before versus now and make the adjustment accordingly, if that makes sense." When the trial court asked whether counsel could specify a particular amount for a modified

_____

[6]      Wife's appellate reply brief describes the trial court's question as a "hypothetical question that had no ultimate bearing on the case." The description is inaccurate. The question was hypothetical only in the sense that it assumed the trial court was going to modify spousal support due to Wife's post-pandemic increase in income rather than issue a step-down order. Specifically, the trial court asked (in somewhat confusing syntax), "What do you propose[,] if I were to change because of her increase in income[,] the court should order?"

5

spousal support order, Wife's counsel stated, "[Wife] is requesting $1,500." Husband's counsel stated that spousal support should be reduced to $884.[7]

The trial court then proceeded to thoroughly discuss the factors set forth in section 4320, ruling that spousal support would be modified downward to $1,250 per month starting on April 1, 2023. The trial court denied Husband's request that the order be made retroactive to at least October 2021, which is when Wife obtained her current full time employment. The trial court explained that because the order was not being made retroactive, "I do believe that that would be a significant amount of the money to assist her in meeting her needs as it relates to what her expenses are."[8] The parties did not request a statement of decision.

Following the hearing, the trial court issued a minute order summarizing its ruling and attaching a worksheet showing its consideration of the factors set forth in Family Code section 4320. The minute order states,

"The Court now makes the following findings and orders:

"● See Family Code § 4320 attached

"● The Court reduces spousal support to $1,250 per month going forward and commencing April 1, 2023.

"● The Court will not order this reduction retroactive

"● The Court notes Wife has increased her assets

---

7 Husband's counsel specified the amount of $882 because Wife's income was, in his calculation, 42 percent higher than it was prior to the pandemic, when spousal support was set at $1,525 per month effective November 15, 2019. Counsel explained that $882 was "42 percent less" than the $1,525 Wife was receiving before the upward modification of support due to Wife's loss of income during the pandemic.

8 Because the reduction in spousal support was not made retroactive to October 1, 2021, Wife was saved from having to reimburse the sum of $19,170 to Husband.

6

"●	The Court is not going to order a Richmond [step-down] order nor a termination of spousal support [*In re Marriage of Richmond* (1980) 105 Cal.App.3d 352, 356]

"●	A change in either party's income is a factor the court would consider this a change of circumstances"[9]

The worksheet attached to the minute order goes through most of the factors set forth in section 4320 and either comments on them or finds them to be inapplicable, although the trial court provided a more thorough discussion of those factors at the hearing.

Wife appeals from the order reducing spousal support. Husband has filed a protective cross appeal regarding the trial court's ruling denying his request for retroactivity, to be considered only in the event we reverse the trial court's order modifying spousal support and remand for further proceedings.

II.

DISCUSSION

A.	*Change of Circumstances*

We first consider Wife's contention that the trial court erred in ordering a downward modification of spousal support because, according to Wife, there was no change of circumstances to justify the order.

1.	*Applicable Legal Standards*

"A spousal support order is modifiable only upon a material change of circumstances since the last order. 'Change of circumstances' means a reduction or increase in the supporting spouse's ability to pay and/or an

---

[9]	Based on the trial court's oral ruling, the statement in the minute order that "[a] change in either party's income is a factor the court would consider this a change of circumstances" [*sic*] appears to refer to the trial court's statement that it would consider *future* modifications of the spousal support order if there was a subsequent change in either of the parties' income.

7

increase or decrease in the supported spouse's needs. It includes all factors affecting need and the ability to pay. Where there is no substantial evidence of a material change of circumstances, an order modifying a support order will be overturned for abuse of discretion." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246 (*West*).) " 'Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order.' " (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1479.)

   2.   *An Implied Finding of Changed Circumstances Is Supported by Substantial Evidence*

Wife argues that the trial court erred because neither in its oral ruling, nor in its minute order, did it make an express finding of a change of circumstance to justify its issuance of an order modifying spousal support. She further contends that substantial evidence does not support such a finding. As we will explain, Wife's argument fails because, in the absence of a statement of decision, we may imply a finding of changed circumstances if, as here, that finding is supported by substantial evidence in the record.

The Family Code provides that "*[a]t the request of either party*, an order modifying, terminating, or setting aside a support order shall include a statement of decision." (§ 3654, italics added.) " 'Under the doctrine of "implied findings," when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence.' A party who does not request a statement of decision may not argue the trial court failed to make any finding required to support its decision." (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248.) "In other words, the necessary findings of ultimate facts will be implied and the only issue on

8

appeal is whether the implied findings are supported by substantial evidence." (*Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 197 (*Abdelqader*).)

Here, even though Wife failed to request a statement of decision, she argues that the trial court was nevertheless required to make an *express* finding of changed circumstances as a prerequisite to issuing an order modifying spousal support and that we may not *imply* such a finding. For this contention, Wife relies on case law she describes as holding that "the doctrine of implied findings does not relieve the court of the requirement to make mandatory findings such as these." However, none of Wife's authority supports her assertion that we are precluded from implying that a trial court made a finding of changed circumstances to support an order modifying spousal support. Wife's authorities provide support only for the proposition that a *finding* of changed circumstances is required, but they do not state that the finding must be *expressly* made, even when no party requests a statement of decision and an implied finding is supported by substantial evidence.[10] (*In re Marriage of Davis* (1983) 141 Cal.App.3d 71, 78 [stating that "by case law, the court must . . . make a finding of changed

---

[10] Wife quotes from *In re Marriage of Maxfield* (1983) 142 Cal.App.3d 755, 759 for the proposition that "a court exceeds its authority and commits a 'mistake of law' by 'not expressly finding changed circumstances before modifying spousal support.' " However, the language in *Maxfield* that Wife quotes and relies upon merely describes a contention made by a party. Specifically, the husband in that case claimed that "the court . . . exceeded its 'authority,' . . . by not expressly finding changed circumstances before modifying spousal support," as requested in the parties' stipulation. (*Ibid.*) Other than describing the husband's contention, which it rejected on a different ground, *Maxfield* did not purport to evaluate whether the trial court is required to make an express finding of changed circumstances in all cases before modifying spousal support. (*Ibid.*)

circumstances since the time of the previous order"]; *In re Marriage of T.C. & D.C.* (2018) 30 Cal.App.5th 419, 424 ["To modify spousal support, a trial court must first find ' " 'a material change of circumstances since the last order.' " ' "].)

Wife also relies on case law applying certain statutory provisions that courts have interpreted as requiring a trial court to make *express* findings. (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 [the court concluded that the language of the attorney fee statute in section 2030, subdivision (a)(2)), which states that "the court *shall* make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties," gives rise to a requirement that the trial court "make express findings—that is, findings stated in words, either in writing or orally on the record," italics added]; *Abdelqader, supra,* 76 Cal.App.5th at p. 198 [when § 3044, subd. (f)(1), (2) stated that a court is required to "state its reasons in writing or on the record" and "make specific findings on each of the factors" in deciding that the statutory presumption against awarding custody to a person who has perpetrated domestic violence has been rebutted, the doctrine of implied findings did not apply, so that the trial court erred in not making express findings].) However, no such statute is at issue here. Wife has pointed to nothing in the Family Code that could be interpreted as requiring the trial court to make an express finding of changed circumstances as a prerequisite to modifying spousal support.[11]

---

[11] In arguing that we may not apply a finding of changed circumstances, Wife also observes that (1) the doctrine of implied findings applies only to omissions or ambiguities in a court's findings, not its legal errors (*Orange*

10

As the doctrine of implied findings is applicable here, we turn to the issue of whether substantial evidence supports a finding of changed circumstances since the last spousal support order to justify a modification of spousal support.[12] (*West, supra*, 152 Cal.App.4th at p. 246 [a change of circumstance inquiry for a spousal support order focuses on the change since the "last order"].) As we have explained, the immediately preceding spousal support order was based on Wife's decreased income during the pandemic. Specifically, the previous spousal support award of $2,315, effective August 1, 2020, was based on a finding that Wife's income from employment was $1,560, and her other taxable income was $73. In contrast, at the time of the March 17, 2023 order, Wife's monthly income from employment had increased to $4,333, with additional taxable income of $323. An increase in monthly income of that magnitude (185 percent) is substantial evidence of materially changed circumstances that justifies a modification of the previous spousal support order. (See *West,* at p. 246 [" '[c]hange of circumstances' " includes "an increase or decrease in the supported spouse's needs"].) Wife's

_____

*County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 312); and (2) " '[w]hen the record clearly demonstrates what the trial court did, we will not presume it did something different.' " (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1550.) Neither of those rules prevent us from applying the doctrine of implied findings in this case. The issue of whether changed circumstances exists concerns a factual issue, not a legal error. Further, Wife has not identified anything in the record suggesting that a finding of changed circumstances would be inconsistent with any express finding by the trial court to the contrary.

12      Although we have concluded that no express finding of changed circumstances is required, we note that the record arguably *does* contain such a finding. During the March 17, 2023 hearing, while delivering its ruling, the trial court referred to a circumstance that had changed regarding Wife: "her substantial increase in what her income is." Earlier in the hearing, the trial court pointed out that Wife's income "significantly changed to the [$]4,300."

11

counsel acknowledged the changed circumstances when she stated, at the March 17, 2023 hearing, "I don't dispute the fact that her income has increased since the last order was put in place is a basis for the Court to consider modification."

Because substantial evidence supports a finding of changed circumstances between the previous spousal support order, effective August 1, 2020, and the date of the March 17, 2023 hearing, we imply a finding by the trial court of changed circumstances to justify its order modifying monthly spousal support to $1,250.

B.  *The Trial Court Did Not Err by Modifying Monthly Spousal Support to $1,250*

Wife next argues that the trial court erred in modifying spousal support because it arbitrarily applied the factors, set forth in section 4320, that are relevant to arriving at an order of spousal support.

1.  *Applicable Legal Standards*

' "Permanent spousal support 'is governed by the statutory scheme set forth in sections 4300 through 4360.  Section 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in section 4320.' " ' (*In re Marriage of Maher & Strawn* (2021) 63 Cal.App.5th 356, 363.)

After spousal support has been ordered, "[t]he trial court has broad discretion in deciding whether to modify a spousal support order based upon changed circumstances." (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 836.)  "In exercising its discretion, the trial court considers the same criteria set forth in section 4320 as it was obligated to consider in making the initial support order." (*Ibid*.)  Section 4320 provides:

12

"In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) All documented evidence of any history of domestic violence . . . between the parties or perpetrated by either party against either party's child . . . .

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

"(l) The goal that the supported party shall be self-supporting within a reasonable period of time. . . . .

13

"(m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award . . . .

"(n) Any other factors the court determines are just and equitable." (§ 4320)

"Although by statute the trial court must consider section 4320 factors in deciding whether to modify a spousal support order, the statute does not purport to require the court to address each factor expressly." (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 602 (*Diamond*).) Further, "[a]fter considering the marital standard of living along with the other statutory factors, 'the court may "fix spousal support at an amount greater than, equal to or less than what the supported spouse may require to maintain the marital standard of living, in order to achieve a just and reasonable result under the facts and circumstances of the case." ' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 425 (*Grimes & Mou*).) " 'While spouses must support each other during marriage [citation], the court has been given greater discretion in marital dissolutions to deny spousal support altogether or to limit such support in an amount and duration that reflects the ability of both parties in contemporary unions to provide for their own needs.' [Citation.] 'The law . . . entitles either spouse to postdissolution support for only so long as necessary to become self-supporting.' " (*Id.* at p. 425.)

"The court has discretion as to the weight it gives to each factor [citation], and then " 'the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of [its] discretion.' " " (*In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1273 (*Shimkus*).) " 'In exercising its discretion the trial court must follow established legal principles and base its findings

14

on substantial evidence. . . . If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court.' " (*West, supra*, 152 Cal.App.4th at p. 246.) " ' "Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders." ' " (*In re Marriage of McLain* (2017) 7 Cal.App.5th 262, 269.)

### 2. *Wife's Challenges to the Modification Order Lack Merit*

Wife presents three grounds for her contention that the trial court erred in setting the amount of modified support at $1,250 per month. Those three grounds are summarized in Wife's appellate reply brief as follows: "[Wife] has identified error on the part of the trial court in (1) reducing support based on [Wife's] increased income when the evidence showed she still could not meet her reasonable needs, (2) reducing support based on the speculation that [Wife's] residence had increased in value since the divorce when she was not required to invade the principal of her retirement or real estate assets to meet her support needs, and (3) reducing support while expressly finding such a reduction would 'hurt' [Wife] and further prevent her from meeting her reasonable support needs in contravention of the purpose of the spousal support statute." As we will discuss, none of Wife's arguments have merit.

### a. *Inability to Meet Her Reasonable Needs*

Wife's first argument is premised on the concept that, in setting spousal support, a trial court should take into account the parties' " 'reasonable needs and their financial abilities.' " (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304) Wife contends that the trial court erred because it reduced spousal support to a level that would not allow her to meet

15

"her reasonable needs." According to Wife, the trial court "exceeded the bounds of reason" because it "acknowledged [Wife] could not meet her needs, *even with her increased income and the current support*, yet reduced support anyway." (Italics added.) Wife relies on several items to support her contention that the trial court concluded she could not meet her reasonable needs, even with the current amount of support ($2,315), let alone with a reduced amount ($1,250). As we will explain, Wife's contentions are not supported by the record.

First, Wife relies on the trial court's statement in the worksheet attached to the March 17, 2023 order that Wife's "current earning capacity does not meet the [marital standard of living]." At the hearing, in discussing this factor, the trial court similarly stated, "the Court looks at it as currently her earning capacity does not meet [the marital standard of living] under [section] 4320."

However, the trial court's finding does not support Wife's contention that the trial court concluded she was unable to meet her "reasonable needs," with either the current spousal support payment of $2,315, or a reduced payment of $1,250. The trial court's statement does not carry that meaning for two reasons. First, the trial court was plainly commenting on Wife's financial condition *without* any support, not *with* a support amount of either $2,315, or $1,250. Second, the trial court was not addressing Wife's ability to meet her "reasonable needs," as Wife contends. Instead, the trial court was commenting on Wife's ability to maintain the marital standard of living, which it found to be middle class or upper middle class. The Family Code " 'does not make "marital standard of living" the absolute measure of *reasonable need*. "Marital standard of living" is merely a threshold or reference point against which all of the statutory factors may be weighed.' "

16

(*Grimes & Mou, supra*, 45 Cal.App.5th at pp. 424–425.) Moreover, "courts have held that the goal of achieving the marital standard of living may decrease in relative importance over time." (*In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1247.) The trial court's March 17, 2023 order was made almost nine years after the parties' June 1, 2014 separation. Therefore, in commenting that Wife's earning capacity did not match the standard of living, the trial court cannot reasonably be understood as stating that Wife could not meet her *reasonable needs* based on her earning capacity, as opposed to meeting the marital standard of living.

Second, Wife points to two other statements appearing in the worksheet attached to the trial court's March 17, 2023 minute order. In the portion of the worksheet corresponding to the statutory factor regarding "[t]he needs of each party based on the standard of living established during the marriage," the trial court wrote, "Untimately [*sic*], [Wife] would have to deplete her savings and assets and would not be able to retire as [Husband] would be able to." Regarding the statutory factor, "The balance of the hardships to each party," the trial court wrote, "A reduction in spousal support would hurt [Wife]." According to Wife, these two statements, taken together, indicate the trial court's acknowledgement that, with a reduction in support, Wife would be "hurt" because "she would have to invade retirement asset principal to make ends meet."

However, that is not what those two statements communicate. First, at the hearing, the trial court made clear that in referring to Wife's need to invade her retirement assets, it meant to indicate that *if* Wife ultimately had to access her assets, her ability to retire might be impacted, in contrast to Husband who will almost certainly have a secure retirement. The trial court explained, "Ultimately, if she does have to rely on whatever savings or assets

17

she has, she's going to deplete that and would not necessarily be able to retire, whereas he will, almost regardless of any other obligations."  The trial court was clearly *not* making a finding that, if it reduced support from the current amount of $2,315, to $1,250, Wife would need to rely on her retirement assets to support herself.

Moreover, with respect to the worksheet statement that "[a] reduction in spousal support would hurt [Wife]," at the hearing, the trial court was clear that it was simply commenting on the balance of hardships, as between the parties, regarding a spousal support order.  The trial court said, "and the balance of hardships, frankly, the only hardship really would be to her in the sense of reducing anything."  From this comment, we understand the trial court to have meant that due to Husband's secure financial situation, *he* would not experience any hardship *regardless* of what support was ordered, and that only Wife would *possibly* experience a hardship from a reduction in support.  The trial court was not making any specific finding that a reduction in support from the amount of $2,315, to $1,250, would necessarily result in harm to Wife and an inability to meet her reasonable needs.

Third, Wife faults the trial court because it "failed to make any findings regarding the immediate and specific tax consequences to [Wife] of the spousal support order, despite her payment of taxes on income reducing her ability to meet her reasonable needs."  Wife's argument lacks merit for several reasons.  For one thing, Section 4320 "does not purport to require the court to address each factor expressly."  (*Diamond, supra*, 72 Cal.App.5th at p. 602.)  Nevertheless, the trial court *did* acknowledge that one of the section 4320 factors was "[t]he immediate and specific tax consequences to each party" (§ 4320, subd. (j)).  It found, however, that the factor was not significant, writing in its worksheet, "not a factor," and stating at the

18

hearing, "Tax consequences, that's not a factor for the Court at this point."
We understand wife's specific argument to be that the trial court should have
expressly acknowledged that Wife would be required to make normally
expected income tax payments on her monthly income of $4,656, which would
result in less available funds to meet her reasonable needs. However, Wife's
income and expense declaration and the pay stubs attached thereto provided
information about Wife's tax filing status and the amount of taxes deducted
from her paychecks. Wife has presented no basis to conclude that the trial
court (1) *ignored* that information in assessing Wife's financial condition and
setting the amount of the spousal support order, or (2) failed to recognize that
Wife, like all workers, would be required to pay income tax on her gross
earnings.

Finally, Wife's fundamental contention is that even with the modified
spousal support amount of $1,250 per month, she was unable to meet her
reasonable expenses. Wife states that "the evidence . . . squarely indicated
she could not be self-sufficient with reduced support." The financial
information contained in the record does not support that assertion. Wife's
counsel stated at the March 17, 2023 hearing that "[$]8,000 is basically the
minimum for [Wife] to be self-supporting."[13] As Husband points out, Wife is

---

[13]   Wife's February 8, 2023 income and expense declaration identified her
monthly household expenses, for herself and her daughter, as $8,509,
including items such as $750 for eating out, $500 for clothes, $1,300 for
groceries and household supplies, and $500 for entertainment, gifts and
vacation. Wife's August 24, 2022 income and expense declaration, in
contrast, identified her monthly household expenses as only $7,019, including
$250 for eating out, $200 for clothes, $500 for groceries and household
supplies, and $200 for entertainment, gifts and vacation. Wife's timeshare
with her daughter did not change between the date of the two declarations,
as it was already at 95 percent by July 1, 2022. Although Wife's counsel

19

receiving child support of $2,009 per month, plus an additional amount based on Husband's variable employment income.[14] Adding together the child support payment of $2,009, Wife's income of $4,656 and a spousal support award of $1,250 results in a total of $7,915. Added to that amount would be any additional child support due to Husband's variable income. On top of all that, the trial court also noted that Wife would have "a significant amount of the money to assist her in meeting her needs as it relates to what her expenses are" because it was not making the reduced spousal support order retroactive to October 2021 as Husband requested.

In light of all of those considerations, the record does not support Wife's contention that the trial court erred by "reducing support based on [Wife's] increased income when the evidence showed she still could not meet her reasonable needs."[15]

---

stated at the hearing that Wife's reasonable needs were $8,000 per month, the trial court could reasonably conclude that, in the absence of any specific explanation for the significant increase in spending on discretionary expenses between August 2022 and February 2023, Wife could reasonably support herself based on the amount set forth in the August 2022 declaration rather than the February 2023 declaration.

[14] As we have explained, the parties' March 17, 2023 stipulation provides for future child support payments based on Husband's variable income according to a specific formula.

[15] We note, moreover, that the trial court's order setting spousal support at $1,250 put Wife in an even *better* position than the spousal support order covering the time period directly before the pandemic. The spousal support order effective November 15, 2019, prior to Wife's pandemic-related loss of income, was in the monthly amount of $1,525. The trial court based that order on a finding that Wife's monthly income from employment was $3,500. In contrast, as of the March 17, 2023 hearing, Wife's monthly income from employment had increased from $3,500 to $4,333–representing an increase of $833. Nevertheless, in making the March 17, 2023 order setting spousal

b.	*The Trial Court Did Not State That It Was Requiring Wife to Invade Her Assets*

Wife next argues that, in making its support order, the trial court "was not looking to income actually produced from the supported spouse's assets but was instead improperly requiring her to invade asset principal." According to Wife, "[b]y ordering support reduced based on the finding that [Wife] would or could deplete assets to support herself, the court was not looking to income actually produced from the supported spouse's assets but was instead improperly requiring her to invade asset principal. . . . This was reversible error."

Wife's argument fails because it fundamentally mischaracterizes the trial court's ruling.[16]  The trial court never stated that it was setting spousal support at an amount that would require Wife to invade asset principal.  Wife relies on the statement in the trial court's worksheet, which we have discussed above, containing the trial court's comment on the statutory factor regarding "[t]he needs of each party based on the standard of living established during the marriage."  The trial court wrote, "Untimately [*sic*], [Wife] would have to deplete her savings and assets and would not be able to retire as [Husband] would be able to."  However, as the trial court's comments at the hearing establish, the trial court was making only the

support at $1,250, the trial court awarded spousal support in an amount only $300 less than the $1,525 in spousal support Wife received when her income was $3,500.

16	Because Wife's argument fails due to her mischaracterization of the trial court's ruling, we need not, and do not, address the accuracy of the legal premise for her argument, namely, that "California courts look only to actual income produced from the supported spouses assets when reviewing a particular spousal support order" and "do not require supported spouses to invest and manage their estate so as to maximize income, or invade capital, to meet their current support needs."

limited observation that if Wife did not receive spousal support, the ultimate effect might be that she would have to deplete her retirement assets, whereas Husband would almost certainly be able to retire. The trial court did *not* find that an order setting spousal support at $1,250 per month would require Wife to invade her retirement assets.

Wife also points to the statement in the minute order, "The Court notes Wife has increased her assets." Based on the discussion during the March 17, 2023 hearing, we infer that this statement refers to the undisputed fact that the value of Wife's residence had increased. In connection with that fact, the trial court commented while delivering its ruling that it did "agree that [Husband's] argument is well taken that claiming poverty when you live in a house with over a million dollars in equity is -- stretches credulity." However, the trial court did not state that it expected a spousal support order of $1,250 per month would require Wife to access her home equity to meet her reasonable needs.

### c.    *The Trial Court Did Not Abuse Its Discretion*

Wife's final contention is a broad catch-all argument that the trial court abused its discretion by modifying spousal support because such an order "directly def[ied] the purpose and goals of spousal support." The argument is premised, to a large extent, on the mischaracterizations of the record that we have described above. Wife repeats the incorrect assertion that the trial court "expressly" found that a monthly spousal support order of $1,250 would "prevent her from meeting her reasonable support needs," and she again claims that the trial court required her to invade her assets. On top of those mistaken contentions, Wife refers to other undisputed facts, such as Husband having significantly more income and assets than Wife, and that Wife "devoted her time during the marriage to raising the children and taking care

22

of the family, which negatively affected her ability to become self-supporting and plan for her retirement in the long run." In addition, Wife once again takes out of context the trial court's statement that "[a] reduction in spousal support would hurt [Wife]," even though, as we have explained, the trial court was not commenting that a reduction to $1,250 would cause harm to Wife.

As we have explained, the trial court has significant discretion in making a spousal support award once it has considered the factors set forth in section 4320. (*Shimkus, supra*, 244 Cal.App.4th at p. 1273.) The record shows that the trial court fully and thoroughly considered the relevant factors, after which it concluded that a modification of monthly spousal support to $1,250 was more appropriate than the amount of $1,500 requested by Wife, or the amount of $884 requested by Husband. Although Wife does not agree with the manner in which the trial court weighed the section 4320 factors, she has not identified any reason for us to conclude that the trial court abused its discretion.

## DISPOSITION

The March 17, 2023 order reducing monthly spousal support to the amount of $1,250 is affirmed. Because we are affirming the trial court's order, Husband's protective cross appeal is denied as moot. Husband is awarded his costs on appeal.

IRION, Acting P. J.

WE CONCUR:

CASTILLO, J.

RUBIN, J.